Joyce YOUNG, Appellant,

v.

The WESTERN PENNSYLVANIA
HOSPITAL and Richard Liposky,
D.M.D., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 8, 1998.
Filed Nov. 16, 1998.
Reargument denied Jan. 1, 1999.

Daniel W. Ernsberger, Pittsburgh, for appellant.

Richard S. Dorfzaun, Pittsburgh, for appellees.

Before EAKIN, SCHILLER and OLSZEWSKI, JJ.

in which the field preemption doctrine has been applied to a particular issue within a field rather than the field as a whole.

**154**

OLSZEWSKI, J.:

This is an appeal of an order denying appellant's motion for post-trial relief stemming from a discovery order granting appellee's motion to quash a subpoena and for a protective order. Appellant alleges that the trial court erred in denying post-trial relief based on the trial court's alleged error in the interpretation and application of the Peer Review Protection Act. 63 P.S. §§ 425.1–425.4. For the reasons set forth below, we affirm the decision of the trial court denying appellant's motion for post-trial relief.

In 1982, appellant underwent oral surgery performed by Richard Liposky, D.M.D. In 1990, the manufacturer of proplast implants informed Dr. Liposky's office that such implants posed potential problems to patients. As a result, Dr. Liposky's staff undertook the task of informing all former patients who either actually had or might have had the proplast implant inserted of the potential problems. During the course of informing these patients, Dr. Liposky's office sent a letter to appellant informing her of the potential problems caused by the implants inserted during her 1982 oral surgery.

Because of this letter, appellant consulted Gary Patterson, D.M.D. about her situation. In 1991, Dr. Patterson performed surgery to remove the implants, but allegedly discovered during the surgery that she never actually received implants.[1] Based on Dr. Patterson's surgical discovery, appellant brought this cause of action against Dr. Liposky alleging that the 1990 letter from his office constituted negligent misrepresentation.

In addition, appellant also brought suit against The Western Pennsylvania Hospital ("appellee") based on corporate negligence.[2] Appellant alleges that appellee was negligent in granting Dr. Liposky staff privileges at the hospital based on his application and faulty recordkeeping.

During the course of pre-trial discovery, appellant noticed appellee for a corporate deposition and requested that appellee produce "all documents, records and information submitted for purposes of reviewing his staff privileges." Appellant's notice of corporate deposition: The Western Pennsylvania Hospital (contained in certified record). Appellant also subpoenaed the Medical Center of Beaver County, PA, as a corporate deponent and demanded "[a]ll documents relating to Dr. Liposky's request for staff privileges and determination of his staff privileges." Subpoena to Corporate Deponent, Medical Center of Beaver County, PA (contained in certified record). Appellee and the Medical Center of Beaver independently moved to quash the subpoena and to obtain a protective order; the trial court granted both motions on September 24, 1996.

Appellant's case proceeded to a jury trial on November 20, 1997. Following the presentation of appellant's case, appellee moved for nonsuit. The trial court granted appellee's motion. Specifically, Judge Joseph James stated:

We find that ... – one of the burdens of proof is to establish the standard that the hospital had an expert – that you needed to have an expert to establish that the hospital breached its duty. I find none. The question says: Documentation previously supplied. It says it's to be attached. He said he previously supplied it. I can find no breach on the part of the hospital in this case.

Furthermore, I find that there is no expert as to causation. There is no one who can testify that as a result of his negligent misrepresentation, if we assume that it was, that is any way that that caused the harm. There is no testimony in the record – and the record is silent as to what steps Dr. Patterson took before he conducted surgery, any records that were

---

1. We note that the record references a second law suit brought by appellant against Dr. Patterson alleging medical malpractice based on his failure to properly x-ray her mouth prior to performing the unnecessary surgery. As this lawsuit is only peripherally related to the present case, we have no reason to comment on the action against Dr. Patterson.

2. This Court finds no reason to comment on appellee's allegation that appellant brought the cause of action against appellee because of the unfortunate financial circumstances leading to Dr. Liposky's filing for bankruptcy.

received. The record is silent as to all the things that Patterson could have done or may have done. . . .

All these things are so ripe for speculation, that a jury of 12 lay people cannot make a decision based on the status of the record. Therefore, the Western Pennsylvania Hospital motion for nonsuit is granted.

R. at 151–52. At the same time, the case against Dr. Liposky was dismissed due to Dr. Liposky's bankruptcy.

Appellant filed a post-trial motion alleging error based on the trial court's granting of appellee's motion to quash a subpoena and for a protective order, and requesting production of the demanded materials and a new trial. On November 7, 1997, Judge McGowan denied appellant's motion for a new trial. This timely appeal follows.

Appellant sets forth only one question for our review: "Is discovery of original documents under the Peer Review Protection Act limited to the first document and not all original documentation?" Appellant's brief at 6. While we find appellant's question presented interesting, it does not address appellant's real issue in this case. Appellant alleges that the lower court committed reversible error when it precluded appellant from requesting or taking testimony relating to "Dr. Liposky's application for and termination of staff privileges, except, Dr. Liposky's application for staff privileges and testimony relating to that document." R. at 50.1. Nothing contained in the record supports appellant's presumption that the court decided to preclude other "original documentation" or found that Dr. Liposky's application was the "first document."

■ In order to review the appeal before us, we must first understand the relief requested. Appellant's brief apparently argues for a new trial based solely on the alleged reversible error by the lower court in granting appellee's motion for a protective order. Appellant argues that without those properly demanded records, there was no use in attempting to hire an expert witness to testify at the time of trial and this lack of an expert witness was the sole ground for Judge James' ruling for nonsuit. The record does

not support appellant's contention. As appellee points out, Judge James based his ruling for nonsuit on multiple grounds. While appellant's failure to provide expert testimony establishing the hospital's duty was one of the grounds for the nonsuit, it was not the only ground.

In its decision the court below noted that appellant failed to provide any evidence proving that appellee's alleged breach of duty in granting staff privileges to Dr. Liposky in any way caused appellant's injuries. While appellant argues that she could not hire an expert to establish the duty, she does not explain how the protective order prevented her from presenting expert testimony as to causation. Thus, regardless of the lower court's decision to grant a protective order precluding discovery of all documents, records, and other material pertaining to Dr. Liposky's application for or determination of staff privileges, Judge James' order granting appellee's motion for nonsuit would remain affirmed.

At the same time, we feel that this case demonstrates the need to clarify the application of the term "original document" under the Peer Review Protection Act. 63 P.S. § 425.4. Section 4 of the Peer Review Protection Act, pertaining to the confidentiality of review organization records, states:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery . . . in any civil action against a professional health care provider arising out of the matter which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions of other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action

merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4.

Appellant argues that she requested "production of the 'original' documents that are discoverable under Peer Review Protection Act." Appellant's brief at 11. Appellant states that "[t]he court, narrowly construing the rights of litigants and broadly construing the legislative intent to protect peer review committees, limited the discovery to the 'original' meaning 'first' document filed with the Peer Review Committee." *Id.*

■ We find nothing in the record to substantiate appellant's claims. Appellant presented appellee and the Medical Center of Beaver County, PA, with open-ended, undefined discovery demands. Nothing in appellant's subpoena or appellant's notice of corporate deposition which limits the nature of the documents demanded or otherwise indicates that the request was somehow limited to "original documents." The trial court did not err when limiting the scope of discovery to only "original" documents.

■ Furthermore, we find that appellant misread the case law as to the use of the term "original document" within the Peer Review Protection Act. The Peer Review Protection Act "represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." *Cooper v. Delaware Valley Medical Center,* 428 Pa.Super. 1, 630 A.2d 1 (Pa.Super.1993), *aff'd,* 539 Pa. 620, 654 A.2d 547 (Pa.1995). As noted in prior cases, the need for confidentiality in the peer review process stems from the need for comprehensive, honest, and sometimes critical evaluations of medical providers by their peers in the profession. *See, e.g., O'Neill v. McKeesport Hospital,* 48

D. & C.3d 115 (1987). Without the protection afforded through the confidentiality of the proceedings, the ability of the profession to police itself effectively would be severely compromised. *Id.*

Courts throughout this state have been cautious and wary in their interpretation of the language of the act, preferring to adopt a relatively strict interpretation of the act. *See Corrigan v. Methodist Hospital,* 857 F.Supp. 434, 437 (E.D.Pa.1994). The varied factual circumstances and the resulting almost contradictory case law interpreting the Peer Review Protection Act serves to further confuse the bar as to the proper interpretation and application of the statute. *See, e.g., Atkins v. Pottstown Memorial Medical Center,* 430 Pa.Super. 279, 634 A.2d 258 (Pa.Super.1993) (involving a slip and fall in a hospital and a demand for incident reports); *Giles v. Chang,* 12 D. & C.4th 653 (1991) (involving proceedings concerning staff privileges).

■ Documents used in the determination of staff privileges are exactly the type of documents the legislature contemplated when drafting the Peer Review Protection Act. Granting, limiting, or revoking staff privileges is one of the strongest tools the medical profession uses to police itself. *See Cooper,* 630 A.2d at 7; *see also* Jorstad, *The Legal Liability of Hospital Staff Privileges,* 28 DRAKE L. REV. 692, 693 (1978).

■ Given the gravity of the proceedings and the legislatively recognized need for confidentiality in such proceedings, we must set forth a criteria for demanding "original documents" under the Peer Review Protection Act. In the present case, appellant argues that her request for documents and materials was a request for original documents, but appellant fails to demonstrate why. Open-ended, undefined discovery demands are not self-proving. Instead, demands for information, documents or materials covered by the Peer Review Protection Act must be clearly defined and narrowly tailored. The medical provider must be able to determine the identity of the documents demanded from the face of the discovery demand. The Peer Review Protection Act does not support or allow for fishing expeditions by parties seeking "original" documents used by a peer re-

view committee without first knowing what those documents are and so naming them in the discovery demand.

Appellant's notice of corporate deposition and subpoena did not specify any documents to be provided. Instead, appellant demanded all documents relating to the peer review committee's review of Dr. Liposky's staff privileges. Such open-ended fishing expeditions cannot be defended under the Peer Review Protection Act. In order to argue that the documents requested are "original documents," a party must establish this fact before the court. If a party is unsure, then an in camera review of documents might be considered. According to the trial court's opinion, appellant never requested such a review and we are not going to correct appellant's mistake at this stage in the proceedings. Besides, as stated above, our doing so would not be enough to grant appellant's request for a new trial.

We affirm the order of the trial court denying post-trial relief. We find that Judge McGowan's decision is based on more than the lack of expert testimony as to the issue of duty; thus the lower court's granting of the protective order in this case would be, at most, harmless error. Further, we find no error in the order of the lower court quashing the subpoena and granting a protective order as appellant failed to prove the nature of the documents requested.

Judgment affirmed.