# Martin v. McAndrew

C.P. of Lackawanna County, nos. 93 CV 1917 and 93 CV 2418.

*Thomas J. Foley Jr.,* for plaintiffs.
*Thomas Comerford, Jay Gebauer* and *John Durkin,* for defendants.

MINORA, *J.,* February 2, 2000—

## FACTUAL BACKGROUND

Presently before the court is a medical malpractice claim wherein the plaintiffs are seeking discovery of information regarding defendant Dr. Larkin from two non-party hospitals, deponents Community Medical Center, Lackawanna County, Pennsylvania and Moses Taylor Hospital also of Scranton.

Plaintiff, Warren Martin, had been a patient of Dr. Patrick McAndrew since October 8, 1976. Dr. McAndrew saw him periodically throughout the time period for complaints of dizziness, which increased toward April of 1991. The plaintiff, Warren Martin, had a history of hypertension for several years, as well as hypercholesterolemia. In addition, the Martin family history is strongly positive for vascular disease. The plaintiff also had symptoms that were compatible with, and indicative of, carotid artery stenosis, which Dr. McAndrew allegedly failed to investigate. Notwithstanding his complaints, Dr. McAndrew continued to see the plaintiff, but left him untreated.

In April of 1991, it was discovered that the plaintiff had a complete occlusion of the right internal carotid artery and 90 percent occlusion of the left carotid artery. On May 6, 1991, the plaintiff underwent elective carotid endarterectomy of the left internal carotid artery by Dr. Vincent Larkin at St. Joseph's Hospital.

Dr. Larkin is alleged to have negligently performed the plaintiff's surgery and incorrectly ordered medication. Shortly after the surgery ended and the plaintiff was transferred to the ICU, his neurological status began to deteriorate and he was returned to surgery for a second time. An exploratory thrombectomy of the left carotid artery was performed, which revealed a blood clot. During this procedure, Dr. Larkin used a shunt and had the effectiveness of the heparin doses monitored by repeated PTTs and performed an interoperative angiogram. As a result, the plaintiff suffered a stroke and severe brain damage, which has left the right side of his body paralyzed and without feeling. Additionally, he suffers from severe cognitive difficulties.

Plaintiff, Warren Martin, brought a cause of action for his injuries and plaintiff, Charlotte Martin, brought a claim for the loss of her husband's society, companionship and consortium that resulted from the alleged negligence committed by the defendants in this action.

Plaintiffs and Community Medical Center have engaged in a constructive dialogue and amicably resolved a number of discovery requests, while Moses Taylor Hospital has not been nearly so constructive in their approach to the outstanding discovery requests. Therefore, it becomes this court's responsibility to review in camera the disputed documents and then to apply the governing legal principles to those documents in order to determine their discoverability.

## LEGAL DISCUSSION

The "Peer Review Protection Act," 63 P.S. §425.1 et seq., specifically 63 P.S. §425.4, has spawned a great deal of litigation which attempts to flesh out its parameters and define its extent and limitations.

Two appellate cases have spoken to these issues. The most recent of the appellate cases, *Young v. Western Pennsylvania Hospital,* 722 A.2d 153 (Pa. Super. 1998), deals with "original" documents discoverable under the Peer Review Protection Act. The next case, *McClellan v. Health Maintenance Organization of Pennsylvania,* 546 Pa. 463, 686 A.2d 801 (1996), is a Supreme Court case wherein an evenly divided court ultimately affirmed the Superior Court, due to its inability to achieve a majority opinion. Both of the appellate cases, coupled with significant common pleas opinions, gave this court great guidance in deciding which of these in camera records submissions should be protected by peer review and which should not be afforded the protection.

Further, the Court of Common Pleas of Lycoming County has also addressed the interplay between Discovery Rule 4009.12(b)(2) of the Pennsylvania Rules of Civil Procedure and the Peer Review Protection Act, 63 P.S. §425.4. In the case of *Wein v. Williamsport Hospital,* 20 Lycoming Rep. 418 (1998), the court ruled that Rule 4009.12(b)(2) does not conflict with 63 P.S. §425.4, the Peer Review Protection Act, when the rule requires a party withholding documents to identify them with particularity and explain why they are not discoverable, while the Act merely prohibits disclosures of procedures and records of the review committee itself. The court concluded that an in camera review is a device available to resolve legitimate disputes regarding whether discovery should be compelled.

In the case of *Johnson v. Tray,* 43 D.&C.4th 129 (Fulton Cty. 1999), the court decided that a plaintiff may discover information that was presented to a peer review committee if such information is available from other sources. The rationale for the court's decision was clear.

"If it were enough that this information was discussed at peer review, any type of information or statistical data, regardless of its significance, relevance or necessity could not be considered discoverable if merely mentioned or discussed in the setting of a peer review meeting."

The rationale as articulated is clear. Any type of data or information, no matter how probative or relevant, could be rendered beyond all legitimate discovery as opposed to admissibility, merely by bringing it up in the context of a peer review meeting. This type of sanitation and/or insulation of relevant, material, probative data or data that could lead to discoverable data simply could not have been contemplated by the Peer Review Protection Act, 63 P.S. §425.4, especially when viewed in conjunction with Pa.R.C.P. 4009.12(b)(2).

Therefore, if such information is traditionally available from other sources outside of peer review, then such information should remain discoverable despite its presentation to peer review.

In accord with the view of Judge Walker as expressed in *Johnson v. Tray, supra,* are two common pleas cases, one from Pittsburgh and one from Philadelphia. In Philadelphia, in the case of *Pitts v. The Children's Hospital of Philadelphia* (C.P. Philadelphia, July 7, 1999) Bernstein, J., the judge ordered St. Luke's Hospital, a non-party hospital, to produce applications for staff privileges of Dr. Theodore Mahoske. This is highly analogous to our case wherein discovery is being sought from non-party hospitals.

In *Pitts,* the hospital refused to divulge the documents, claiming a privilege under the Peer Review Protection Act, *supra.* The court rejected this argument, noting that the Peer Review Protection Act specifically does not extend its privilege to materials otherwise available from

other sources merely because they were presented in committee. This is consistent with *Johnson v. Tray, supra;* however, the *Pitts* opinion goes on to state that any performance evaluations prepared solely for the purposes of peer review were protected and not discoverable so long as they were used only for peer review purposes.

Credential applications or applications for staff privileges were discoverable for essentially three reasons. First, the credential or staff privileges applications were not prepared solely for peer review purposes; and second, these applications contain information readily available from other sources and are obtained in the ordinary course of business. Finally, it was thought that no guarantee of confidentiality is required for the hospital to obtain complete and accurate information on these types of applications.

For all these reasons, third party hospital staff privileges or credential applications were deemed discoverable in this *Pitts* case, which is analogous to our case sub judice.

In reaching the ruling in the *Pitts* case, Judge Bernstein found a ruling by Judge Wettick of the Court of Common Pleas in Pittsburgh to be controlling. In the case of *Lindsay v. Bosta* (C.P. Allegheny Cty., March 10, 1999) Wettick, J., the court faced precisely the same issue.

Wettick concluded that materials relating to a hospital's credentialing process are discoverable when it consists of information obtained in the hospital's ordinary course of business.

Wettick's opinion further instructed that the hospital can delete parts of an application that it feels are confidential as long as it describes the type of information deleted so that the opposing party can challenge it.

Further, in *Lindsay, supra,* the court declared discoverable: the names of the members of the peer review committee; information about whether peer review was conducted regarding any treatment this party received and any information concerning whether the hospital has a formal written policy as to what a physician in a given hospital department can or cannot do.

Viewing the facts of this case in the legal context above outlined, it becomes abundantly clear that certain of these materials are discoverable. While the cases cited herein are written by fellow court of common pleas judges, this court finds their logic, rationale and consistency to be persuasive.

Furthermore, there are some appellate court cases which offer guidance consistent with the above. In the case of *Atkins v. Pottstown Memorial Medical Center,* 430 Pa. Super. 279, 634 A.2d 258 (1993), a patient brought suit against the hospital for injuries he suffered when he fell after he had been administered preoperative shots. The theory was that the hospital employee was negligent in allowing the patient to go to the bathroom after the shots had been administered. The jury found negligence but no substantial factor. Further, the court's exclusion of an incident report was deemed to be harmless error as it should not have been held to be peer review material.

The Superior Court held that a risk manager may not be a review organization under the Peer Review Act, but went on to say that even if they were, "Th[e] document contained information '. . . available from [other] sources.' " *Atkins, supra* at 283, 634 A.2d at 260, and, as such, it fell into the exception and was therefore not protected.

Additionally, in *Young v. The Western Pennsylvania Hospital and Richard Liposky D.M.D.*, 722 A.2d 153 (Pa. Super. 1998), the Superior Court reviewed a case wherein a patient brought a negligence action against an oral surgeon and hospital contending that the surgeon erroneously informed her of the need to remove dental implants which had never been implanted in her. Further, there was a direct negligence count against the hospital for negligently granting privileges to the oral surgeon.

In that case, the Superior Court upheld the trial court which ordered discovery only of "original documents" which are always discoverable under the Peer Review Protection Act and further stated that documents used in the determination of staff privileges are exactly the type of documents the legislature contemplated when drafting the Peer Review Protection Act, 63 P.S. §§425.1-425.4.

This case, much like our own, involved a discovery request made by the plaintiff against a third party non-defendant hospital deponent. In *Young, supra* at 156, the Superior Court stated, "Documents used in the determination of staff privileges are exactly the type of documents the legislature contemplated when drafting the Peer Review Protection Act. Granting, limiting, or revoking of staff privileges is one of the strongest tools the medical profession uses to protect itself."

Moving forward with this premise, we now know that the granting, extending or revoking of staff privileges is peer review protected. We must now review the documents to determine if they fall into the original documents' exception to peer review, thereby making them open to discovery under 63 P.S. §§425.1-425.4, or whether they are business records exceptions under *Bosta, supra.*

Using these guidelines, the court finds as follows regarding the catalog of hospital files provided by Moses Taylor Hospital: D=discoverable; PR=peer review. Similarly, see the inventory of Dr. Vincent Larkin's credential file from Community Medical Center, which is likewise marked.

An appropriate order follows.

## ORDER

And now, to wit, February 2, 2000, it is hereby ordered that the discovery requests propounded by plaintiff be responded to by both Community Medical Center and Moses Taylor Hospital per the index enclosed as a part of this opinion.

---

## CATALOG OF HOSPITAL FILES FROM MOSES TAYLOR HOSPITAL

I. Credential File:

| Document | Date |
|---|---|
| D—1. Application for appointment to the medical staff (without delineation of privileges) | November 5, 1979 |
| D—2. Application for appointment to the medical staff (with delineation of privileges) | March 4, 1982 |
| PR—3. Letter to Dr. Larkin from James Kinney, hospital administrator | August 22, 1982 |
| D—4. Annual reappointment application for medical staff privileges (4) (without delineation of privileges) | 1984 |
| | 1985 |
| | 1986 |
| | 1987 |
| PR—5. Letter to Dr. Larkin from James Kinney, hospital administration | August 8, 1986 |
| PR—6. Letter from Dr. Stavitsky to Dr. Larkin | June 11, 1986 |
| PR—7. Letter from Dr. Larkin to hospital | December 19, 1986 |
| PR—8. Letters between Dr. Larkin and James Kinney (5) | December 17, 1986 to February 17, 1987 |

138

[Off staff January 1, 1988 to July 23, 1990]
D—9. Letter from James Kinney to Dr. Larkin     June 7, 1989
D—10. New application for appointment to medical
staff (with delineations)     November 27, 1989
Support documentation:
PR—a. Letter from Dr. Stavitsky to Charles Bannon     January 11, 1990
PR—b. Reply from Dr. Bannon to Dr. Stavitsky
with delineation of privileges at Mercy Hospital     Undated
PR—c. Letter from Dr. Stavitsky to Dr. Nese at CMC     January 11, 1990
PR—d. Reply Dr. Nese to Dr. Stavitsky     February 12, 1990
PR—e. Report on privileges     Undated
PR—f. Letter from Dr. Stavitsky to Dr. Larkin     March 20, 1990
PR—g. Letter from Dr. Stavitsky to Dr. Larkin     May 21, 1990
PR—h. Letter from Irene Foley to Dr. Larkin     June 13, 1990
PR—i. Letter from Dr. Larkin to Dr. Stavitsky     April 9, 1990
PR—j. Letter from James Kinney to Dr. Larkin
with delineation for privileges     July 24, 1990
PR—11. Letter from James Kinney to Dr. Larkin re transit
staff status with confidential performance profile attached
(Internal use only)     September 24, 1991
D—12. Date bank query     September 30, 1991
PR—13. Letter from James Kinney to Dr. Larkin     September 25, 1991
D—14. Reappointment application for staff privileges (3)
D—(1) with delineations, and     June 24, 1993
D—(2) Health form and (3) Date bank information, and     July 12, 1995
D—(4) Malpractice information     December 5, 1997
PR—15. Supplemental request by Dr. Larkin for additional
privileges with supporting documentation     November 17, 1995
PR—a. Letter from Mid Valley Hospital
PR—b. Letter from Mercy Hospital
PR—c. Letter from Marion Community
PR—d. Letter from Dr. Larkin to Dr. Morgan
PR—e. Approved letter from Harold Anderson
to Dr. Larkin     . February 29, 1996
D—16. Physician acknowledgment statement re billing
(10 statements)     October 1, 1984-
    October 1, 1993
D—17. Radiation safety form (6 forms)     1990-1997
D—18. Questionnaire from Health South     · April 22, 1997
D—19. Questionnaire from HMO of North Eastern PA     March 24, 1992
D—20. Questionnaire from Penn State/Geisinger     November 10, 1997
D—21. Letter from Dr. Morgan to: "To who it may concern" (2) April 6, 1998
re privileges granted by Moses Taylor Hospital     July 1, 1998
D—22. Copy of malpractice insurance (current)
D—23. AMA certificate

D—24. Copy of board certification certificate

II. Peer Review File: Objection to Disclosure of Contents of Entire File

| Document | Date |
| --- | --- |
| D—1. One report | February 29, 1996 |
| D—2. One report | August 20, 1996 |
| D—3. One report | August 22, 1996 |
| D—4. One report | December 31, 1996 |

## INVENTORY OF DR. VINCENT LARKIN'S CREDENTIAL FILE FROM COMMUNITY MEDICAL CENTER

(1) Letter dated March 18, 1998, from Saadeddine Hijazi M.D., director of surgery, Community Medical Center, confirming Dr. Larkin as member of medical staff at Community Medical Center with active staff privileges in general and vascular surgery including carotid endarterectomy without restrictions since December 10, 1979.—1 page

(2) Letter dated December 17, 1997, from Mark A. McGurrin M.D., CMC medical director of the vascular laboratory, to Dr. Larkin regarding participation on physician panel to read vascular studies.—1 page

(3) Letter dated February 9, 1998, from Dr. Larkin to Saadeddine Hijazi M.D. regarding return from sick leave.—1 page

(4) Health attestation dated February 2, 1998, signed by Dennis J. Kondash D.O. approving Dr. Larkin.—1 page

(5) Letter dated January 14, 1998, from Dr. Larkin to Joseph Demko M.D., vice president of medical affairs, regarding copy of 1998 malpractice insurance coverage and return to surgical practice.—1 page

(6) 1998 declaration sheet of Dr. Larkin's insurance coverage with Pennsylvania Medical Society Liability Insurance Company.—1 page

(7) Letter dated August 22, 1997, from Joseph Demko M.D. to Dr. Larkin regarding cancellation of agreement for medical director of non-invasive laboratory.—1 page

(8) Letter dated December 30, 1997, from Saadeddine Hijazi M.D. to Dr. Larkin regarding Dr. Mark McGurrin's assumption of position as director of vascular surgery at CMC.—1 page

(9) Internal Community Medical Center memorandum from Saadeddine Hijazi M.D. to Dr. Larkin regarding review of Community Medical Center privilege forms.—1 page

(10) Letter dated October 16, 1997, from Attorney Lawrence S. Markowitz to Barbara Bossi, hospital administrator, CMC, regarding Dr. Larkin's position as medical director of the vascular laboratory.—2 pages

(11) Letter dated October 26, 1979, from Constantine Papdopoulos M.D. to John C. Sanner M.D., medical director of CMC, regarding recommendation of Dr. Larkin.—1 page

(12) Letter dated August 24, 1979, from John C. Sanner M.D., vice president for medical affairs, to Constantine Papdopoulos M.D., Brooklyn Hospital, regarding request for recommendation of Dr. Larkin.—1 page

(13) Letter dated April 22, 1991, from William J. Black M.D., vice president, medical affairs, to Dr. Larkin regarding reappointment to medical staff at CMC.—1 page

PR* (14) Review of qualifications and ability of Dr. Larkin by Anthony J. Nese, director of surgery at Community Medical Center, dated December 2, 1990.—3 pages

(15) Application of Dr. Larkin for reappointment to active staff of Community Medical Center dated June 20, 1990.—4 pages

(16) Community Medical Center general surgical control sheet dated July 6, 1990 and December 2, 1990, respectively.—3 pages

PR* (17) Community Medical Center physician reappraisal profile.—2 pages and undated

PR* (18) 1987-1989 peer review of patient procedures performed by Vincent Larkin M.D.—4 pages

(19) Certification of completion of upper gastrointestinal endoscopy post graduate course dated October 16, 1986 from American Institute of Medical Education and Research.—1 page

(20) Certification of completion of post graduate course entitled "Techniques of Esophagogastroduodenoscopy" from American Institute of Medical Education and Research dated October 15, 1986.—1 page

(21) Certification of completion of post graduate course at Albert Einstein College of Medicine, September 18-23, 1989 entitled "Surgery Board Review."—1 page

(22) Certification of completion of laser course at Thorek Hospital, Chicago, Illinois titled "Laser Laparoscopic Cholecystectomy" dated June 26-27, 1990.—1 page

PR* (23) Letter dated July 5, 1990, from Daniel M. McNabb M.D. to Community Medical Center regarding Dr. Larkin's employment at Carbondale General Hospital since 1992.—1 page

(24) Health attestation form dated 6/21/90.

(25) Dr. Larkin's certification of the American Board of Surgery dated October 13, 1989 reaffirming Dr. Larkin as qualified in the practice and specialty of surgery.—1 page

(26) Commonwealth of Pennsylvania medical license issued December 15, 1998.—1 page

(27) Controlled substances registration certificate issued February 24, 1988.—1 page

(28) Declaration page of physician's professional liability policy dated January 1, 1990.—1 page

(29) Reappointment mechanism check list—undated.—1 page

(30) Application for reappointment to medical staff and renewal privileges dated September 23, 1980.—2 pages

(31) Community Medical Center surgical control sheet.—2 pages

(32) Community Medical Center surgical control sheet dated October 10, 1980—1 page

(33) Letter dated November 30, 1988 from John C. Sanner M.D., vice president of medical affairs, to Dr. Larkin regarding reappointment to medical staff for 1988-1990—1 page

(34) Community Medical Center recommendation of credentials review committee.—3 pages

(35) Reappointment mechanisms check list—undated.—1 page

(36) Letter dated October 26, 1998 from John C. Sanner M.D., vice president of medical affairs, to Vincent Larkin M.D., regarding completion of application for reappointment.—1 page

(37) Health attestation form—date illegible.—1 page

PR* (38) Physician reappraisal profile 1986-1987.—1 page

D* (39) Application for reappointment dated July 4, 1988.—4 pages

(40) Letter dated November 8, 1988 from Dr. Larkin to John C. Sanner M.D. regarding completion of medical staff application.—1 page

(41) Controlled substances registration certificate issued February 24, 1988.—1 page

(42) Surgical control sheet dated July 8, 1988.—2 pages

(43) Letter dated October 28, 1986, from John C. Sanner M.D., vice president, medical affairs, to Dr. Larkin regarding reappointment to active staff.—1 page

(44) Application for reappointment to medical staff dated September 16, 1986.—1 page

PR* (45) Review of qualifications and activities of Vincent Larkin M.D. dated October 6, 1986.—1 page

(46) Surgical control sheet dated October 6, 1986.—1 page

PR* (47) Physician reappraisal profile dated 1984-1985.—1 page

D* (48) Undated memorandum, no recipient listed concerning 1984 malpractice case.—1 page

(49) Declaration sheet, physician's insurance company policy October 1, 1986 through October 1, 1987.—1 page

(50) Health attestation form dated October 14, 1986.—1 page

(51) Controlled substances registration certificate issued April 23, 1986.—1 page

(52) Commonwealth of Pennsylvania medical license issued December 31, 1986—1 page

(53) Letter dated December 12, 1984 from John C. Sanner M.D. to Dr. Larkin regarding reappointment to medical staff.—1 page

(54) Application for reappointment to medical staff dated September 19, 1984.—1 page

(55) Review of Dr. Larkin's medical staff activities dated November 11, 1984.—1 page

(56) Surgical control sheet dated November 16, 1984.—1 page

144

(57) Declaration page of Pennsylvania Medical Society Liability Insurance Company—policy period January 1, 1984 to January 1, 1985.—1 page

D* (58) Undated handwritten note to Dr. John Sanner regarding settlement of lawsuit.—1 page

(59) Letter dated October 29, 1982 from John C. Sanner M.D. to Dr. Larkin regarding reappointment to medical staff for staff year 1982-1984—1 page

(60) Reappointment to medical staff for staff year 1982-1984.—2 pages

(61) Surgical control sheet dated April 19, 1982.—2 pages

(62) Community Medical Center physician reappraisal profile.—2 pages

(63) Letter dated November 26, 1979 from John C. Sanner M.D. to Dr. Larkin regarding appointment to courtesy staff at CMC.—1 page

(64) Surgical control sheet dated June 19, 1992.—2 pages

(65) Blank request for ventilator care privileges—unsigned and undated.—1 page

(66) Letter dated May 21, 1993, from David T. Richards M.D., vice president, medical affairs, to Dr. Larkin regarding recredentialing for staff year 1992-1994.—1 page

PR* (67) Surgery Department director's assessment and report on Vincent Larkin M.D. dated 10/30/92.—3 pages

PR* (68) Community Medical Center physician reappraisal profile for Dr. Larkin, 1990-1991.—1 page

(69) Community Medical Center reappointment mechanism—undated.—1 page

(70) Request for reappointment of clinical privileges dated June 19, 1992.—5 pages

D\* (71) Memorandum dated June 17, 1992, undesignated as to recipient, regarding pending lawsuit.—1 page

(72) Coversheet complaint.—1 page

(73) Health attestation dated June 29, 1992.—1 page

(74) Letter dated July 17, 1992 from Saadeddine Hijazi M.D. to Dr. Sheer regarding Dr. Larkin's surgical practice at CMC.—1 page

PR\* (75) Review of professional abilities of Dr. Larkin, undated.—3 pages

(76) Undated summary of continuing education credits.—1 page

(77) American Medical Association certificate regarding completion of continuing medical education dated 1992 through 1995.—1 page

(78) Letter dated July 18, 1990 from Carol Warner, secretary of continuing medical education, to Dr. Larkin regarding credits accumulated to date.—1 page

(79) Certification of completion of seminar in surgical techniques from Colby College dated July 17-20, 1990.—1 page

(80) Certificate of completion—Arizona Heart Institute seminar in vascular laser surgery dated October 16-18, 1990.—1 page

(81) Application form for seminar in new ambulatory medical, surgical and laser techniques applicable to venous disorders dated October 25, 1990.—1 page

(82) Certification of completion of continuing medical education in practical colorectal surgery, November 16-17, 1990.—1 page

(83) Certificate of completion from Harvard Medical School regarding seminar on angioscopy and endovascular surgery dated December 10-12, 1990.—1 page

(84) Letter from American College of Surgeons regarding participation in surgical education program earning 85 credit hours.—1 page

(85) Letter dated July 30, 1991, from Carol Warner, secretary of continuing medical education, regarding number of credit hours towards physician's recognition award.—1 page

(86) Certification of completion of symposium on vascular surgery.—1 page

(87) Employment agreement dated March 3, 1997 regarding services as medical director of the vascular laboratory.—8 pages

(88) Letter dated July 2, 1997, from Joseph Demko M.D., vice president, medical affairs, to Dr. Larkin regarding vascular surgery reading panel.

(89) Letter dated June 23, 1997, from Dr. Larkin to Joseph Demko M.D., vice president, medical affairs, regarding vascular laboratory reading panel.

(90) Letter dated May 5, 1997, from Saadeddine Hijazi M.D., Department of Surgery, to Dr. Larkin regarding the scheduling with radiology department.—1 page

(91) Letter dated March 19, 1997, from Saadeddine Hijazi M.D. to Dr. Larkin regarding appointment to role as chief of vascular surgery at CMC.—1 page

(92) Undated letter from Joseph Demko M.D., vice president, medical affairs, to Dr. Larkin regarding signature on contract for medical director of vascular lab position.

(93) Undated letter from Joseph Demko M.D., vice president, medical affairs, to Philip Boccagno M.D. regarding Dr. Larkin's signature on contract.

(94) Certification of completion of continuing education in techniques in interventional radiology and techniques in vascular and endovascular surgery from Albert

Einstein College of Medicine dated November 20-24, 1996.

(95) Application for appointment to the medical staff dated July 30, 1979.

(96) Letter dated January 9, 1997, from Eugene Chiavacci M.D., chairman, medical executive committee, to Dr Larkin regarding report on vascular laboratory cases.

(97) Letter dated September 12, 1995, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin regarding assignment of unassigned laboratory cases.

(98) Letter dated June 11, 1996, from Dianne Winters, medical staff coordinator, to Dr. Larkin regarding radiology privileges.

(99) Confidential risk quality work sheet dated October 15, 1995.

(100) Letter dated September 21, 1995, from Dr. Larkin and James Roche M.D. to Anthony J. Nese M.D., director, Department of Surgery, regarding scheduling of cases in operating room.

(101) Letter dated January 2, 1996, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin regarding assumption of role as chief of vascular surgery.

(102) Letter dated November 29, 1994, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin regarding assumption of role as chief of vascular surgery.

(103) Recommendations for vascular surgical department director undated.—1 page

(104) Letter dated November 29, 1994, from Anthony J. Nese M.D., director, Department of Surgery, to David T. Richards M.D., vice president, medical affairs, regard-

ing appointment of physicians for leadership positions within Department of Surgery.

(105) Letter dated October 10, 1995, from Dianne Winters, medical staff coordinator, regarding confirmation of Dr. Larkin as having staff privileges at Department of Surgery since 1979.

(106) Letter dated July 14, 1994, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin regarding assignment as director of vascular surgery.

(107) Letter dated October 18, 1990, from Anthony J. Nese M.D., director, Department of Surgery, regarding prerequisites for application for vascular surgical privileges.

(108) Letter dated November 23, 1993, from Vincent Larkin M.D., to David Richards M.D., vice president, medical affairs, regarding duties as director of vascular laboratory.

(109) Internal CMC memorandum from David T. Richards M.D., vice president, medical affairs, to John Goodnow, executive vice president and chief executive officer of Community Medical Center, dated July 13, 1993, regarding lease of diagnostic duplex imager.—1 page

(110) Letter dated July 12, 1993, from David T. Richards M.D., vice president of medical affairs, to Dr. Larkin regarding position as chief for non-invasive vascular laboratory.—1 page

(111) Letter dated June 21, 1993, from David T. Richards M.D., vice president of medical affairs, to Dr. Larkin regarding position as chief for non-invasive vascular laboratory.—2 pages

(112) Letter dated June 21, 1993, from David T. Richards M.D., vice president, medical affairs, to Dr. Larkin regarding rental of equipment for vascular laboratory and invoice.—2 pages

(113) Letter dated April 7, 1993, from Sister Jean Coughlin to Anthony J. Nese M.D. regarding performance of procedures at Marion Community Hospital since 1989.—1 page

(114) Letter dated July 13, 1992, from Dr. David T. Richards, vice president, medical affairs, to Dr. Larkin regarding vascular surgery laboratory.—2 pages

(115) Letter dated March 10, 1993, from Anthony J. Nese M.D., director, Department of Surgery, to Jean Deecki R.N., regarding Dr. Larkin's credentials to use Nd:YAG laser.—1 page

(116) Letter dated December 9, 1991, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin reviewing grant of privileges in endovascular procedures.—1 page

(117) Letter dated November 27, 1991, from Dr. Larkin to Dr. Nese regarding application for privileges to include intraluminal arthrectomy and vascular endoscopy.—1 page

(118) St. Joseph Hospital's brochure regarding rotary arthrectomy.—1 page

(119) Internal memorandum from Anthony J. Nese M.D. to William A. Black, vice president, medical affairs, regarding grant of temporary privileges to Dr. Larkin for laparoscopic cholecystectomy.—1 page

(120) Letter dated October 31, 1990, from Dr. Larkin to Dr. Nese regarding request for privileges to perform laser laparoscopic cholecystectomy.—1 page

(121) Letter dated November 7, 1990, from Sister Jean Coughlin, executor director, St. Joseph's Hospital, to Dr. Nese regarding Dr. Larkin's application for privileges and laparoscopic cholecystectomy.—1 page

(122) Letter dated December 7, 1992, from Anthony J. Nese M.D. to Randall W. Snyder M.D., director, gas-

trointestinal laboratory, regarding Dr. Larkin's training and experience with regard to PEG 2 procedures.—1 page

(123) Review and itemization of procedures performed by Dr. Larkin at Community Medical Center.—1 page (undated)

(124) Letter dated November 10, 1992, from Anthony J. Nese M.D., director, Department of Surgery, to Dr. Larkin regarding request of privileges for colonoscopy procedures.—1 page

PR* (125) Confidential physician's checklist.—1 page

(126) Letter dated March 10, 1992, from Thomas Baumann M.D., medical director, HMO of Northeastern PA, regarding participation of Dr. Larkin to William Black Jr. M.D., medical director, Community Medical Center.—1 page

(127) Specialist application from HMO of Northeastern PA regarding application to panel of physicians dated December 23, 1991.—1 page

(128) Internal memorandum from Anthony J. Nese M.D. to Betty Klansek R.N. and Sherry Fotte R.N. regarding surgeons with laser laparoscopic cholecystectomy surgical privileges.—1 page

(129) Internal memorandum from Anthony J. Nese M.D. to Betty Klansek R.N. and Sherry Fotte R.N. regarding surgeons with laser laparoscopic cholecystectomy surgical procedures dated February 7, 1992.—1 page

(130) Controlled substances registration certificate issued March 1, 1991.—1 page

(131) Commonwealth of Pennsylvania license issued December 18, 1990.—1 page

(132) Declaration page physician's professional liability policy for policy period January 1, 1991 through January 1, 1992.—1 page

(133) Internal memorandum dated November 21 1990, from Anthony J. Nese M.D. to William Black M.D. regarding review of Dr. Larkin's credentials for laparoscopic cholecystectomy.—1 page

(134) Letter dated October 31, 1990, from Dr Larkin to Anthony J. Nese regarding request for privileges for laser laparoscopic cholecystectomy.—1 page

(135) Telephone message from Dianne Winters to Donna Lewis dated August 3, 1990 regarding lawsuit against Dr. Hijazi.

(136) Letter dated April 25, 1990, from the American Board of Surgery to Diane Baggott, medical staff coordinator, regarding Dr. Larkin's certification by American Board of Surgery.—1 page

(137) Memo concerning corrections and/or additions to professionals and/or residents mailing address.—1 page

(138) Letter dated April 10, 1990, from Diane Baggott, medical staff coordinator, to Dr. Larkin regarding update of individual records.—1 page

(139) Letter dated April 2, 1990, from Diane Baggott to American Board of Surgery regarding verification of certification by American Board of Surgery.—1 page

(140) Letter dated April 4, 1990, from Diane Baggott to Anthony J. Nese M.D. regarding grant of temporary privileges to Dr. Larkin for YAG laser.—1 page

(141) Letter dated September 25, 1989, from Dr. Larkin to Bernard Rosenfeld M.D., chairman, laser committee, regarding procedure with YAG laser.—1 page

(142) Letter dated October 9, 1986, from Dr Larkin to John C. Sanner M.D. regarding request for privileges in laser surgery at CMC.—1 page

(143) Certification of completion, The Institute for Applied Laser Surgery Inc., dated September 19-21, 1986.—5 pages

PR\* (144) Letter dated February 12, 1990, from Anthony J. Nese M.D. to Eli Stavitsky D.D.S., chairman, credential committee, Moses Taylor Hospital, regarding Dr. Larkin's privileges at CMC.—1 page

PR\* (145) Letter from Eli Stavitsky D.D.S., chairman, credentials committee, to Dr. Nese regarding Dr. Larkin's application for medical staff membership (with delineation of privileges).—6 pages

(146) Declaration page physician's professional liability policy with policy period January 1, 1990 to January 1, 1991.—1 page

D\* (147) Internal Community Medical Center memorandum from Betty Klansek R.N. to John C. Sanner M.D., vice president, medical affairs, regarding number of bronchoscopic procedures performed by Dr. Larkin.—1 page

(148) Minutes of meeting of laser committee—December 1987.—1 page

(149) Community Medical Center internal memorandum from Diane Baggott, medical staff coordinator, to Betty Klansek R.N., surgical services, regarding Dr. Larkin's supplementation of information regarding YAG laser privileges.—1 page

(150) Letter dated September 19, 1989, from Diane Baggott, medical staff coordinator, to Dr. Larkin regarding supplementation of information regarding YAG laser procedure.—1 page

(151) Letter dated January 12, 1987, from Edwin S. Malloy M.D., director, Department of Surgery, to Bernard Rosenfeld M.D., verification of Dr. Larkin's completion of Philadelphia laser workshop.—1 page

(152) Letter dated October 29, 1986, from John C. Sanner M.D., vice president medical affairs, to Edwin S. Malloy M.D., director, Department of Surgery, regard-

ing Dr. Larkin's letter requesting privileges in laser surgery.—1 page

(153) Internal memorandum to laser committee from Edwin S. Malloy, director, Department of Surgery, dated September 11, 1987, regarding review of qualifications of Dr. Larkin.—1 page

(154) Letter dated November 4, 1987, from Vincent Larkin M.D. to John C. Sanner M.D. regarding status of request for laser privileges at Community Medical Center.—1 page

(155) Internal memorandum dated November 7, 1989, from Diane Baggott, medical staff coordinator, to Betty Klansek R.N., coordinator of surgical services, regarding temporary privileges to Dr. Larkin for use of YAG laser.—1 page

(156) Letter dated February 2, 1989, from William A. Black Jr. M.D., vice president, medical affairs, to Dr. Larkin requesting current copies of DEA certificate, Pennsylvania state license and malpractice insurance.—1 page

(157) Commonwealth of Pennsylvania license issued December 15, 1988.—1 page

(158) Declaration page from physicians insurance company for policy period January 1, 1989 to January 1, 1990.—1 page

(159) Internal memorandum dated January 2, 1989, from Marlene Milford R.N., tumor registrar, to Vincent Larkin M.D. regarding continuing medical education credit hours earned to date.—1 page

(160) Letter dated May 1, 1988, from Dr. Larkin to Dr. Edwin Malloy, director of surgery, regarding presentation of credentials to medical board for formal approval for performance of non-invasive vascular studies.—2 pages

(161) Letter dated June 28, 1988, from John C. Sanner M.D., vice president, medical affairs, to Dr. Larkin regarding grant of privileges for use of YAG and CO2 laser.—1 page

(162) Letter dated February 16, 1988, from Diane Baggott, medical staff coordinator, to Dr. Larkin regarding attendance at staff and department meetings.—1 page

(163) Declaration page of professional liability policy with policy period January 1, 1988 to January 1, 1989.—1 page

D* (164) Letter dated August 4, 1987, from John C. Sanner M.D., vice president, medical affairs, to Dr. Larkin regarding chart completion, admitting privileges, consulting privileges and elective surgical privileges.—1 page

D* (165) Letter dated July 29, 1987, from John C. Sanner M.D., vice president medical affairs, to Dr. Larkin regarding chart completion, admitting privileges, consulting privileges and elective surgical privileges.—1 page

(166) Controlled substances registration certificate issued March 25, 1987.—1 page

(167) Commonwealth of Pennsylvania medical license issued January 14, 1987.—1 page

(168) Letter dated October 29, 1986, from John C. Sanner M.D. to Edwin S. Malloy M.D., director, department of surgery, regarding Dr. Larkin's request for laser surgery privileges.—1 page

(169) Letter dated July 7, 1986, from Patrick J. Ferraro M.D., chairman, trauma team, to Dr. Larkin regarding recruitment of thoracic surgeon to trauma team.—1 page

(170) Letter dated April 7, 1986, from William Black M.D., medical director, to Dr. Larkin regarding physician's assistant and applicable rules and regulations.—2 pages.

(171) Certificate indicating completion of community medical education requirements dated January 19, 1986.—2 pages.

(172) Controlled substances registration certificate issued April 23, 1986.—1 page

(173) Physician's professional liability insurance policy, including declaration page and summary of premiums with policy period for 1985.—5 pages.

(174) Letter dated January 16, 1986, from William A. Black M.D., medical director, to Dr. Larkin regarding placement of vascular laboratory under Department of Surgery.—1 page

D* (175) February 5, 1985 correspondence from Frank A. Milani M.D. to Dr. Larkin regarding patient chart review.—2 pages

(176) Commonwealth of Pennsylvania medical license issued December 14, 1984.—1 page

(177) Letter dated May 18, 1984, from John C. Sanner M.D., vice president, medical affairs, to Dr. Larkin regarding request for credentials for use of flexible colonoscope.—1 page

(178) Letter dated October 23, 1984, from John C. Sanner M.D. to Dr. Larkin regarding reappointment to medical staff.—1 page

(179) Letter dated July 6, 1984, from Susan C. Landgon to Dr. Larkin regarding accumulation of credit hours towards physicians recognition award and continuing medical education requirements.—1 page

(180) Letter dated May 23, 1984, from Michael J. Turock M.D., president of the medical staff, to Dr. Larkin regarding development of subcommittee on ventilator care.—1 page

(181) Letter dated April 10, 1984, from Patrick J. Ferraro M.D., director of critical care, to Dr. Larkin re-

garding credentials for ventilator care, by critical care committee.—1 page

(182) Letter dated April 4, 1983, from Adrian Samojlowitz, president, Community Medical Center, to Frank Padberg M.D., American College of Surgeons, regarding status of Dr. Larkin.—1 page

(183) Letter dated June 23, 1980, from John C. Sanner M.D. to Dr. Larkin regarding transfer from the courtesy staff to the active staff.—1 page

(184) Memorandum dated May 27, 1980, from Dr. Larkin to William A. Steinbach M.D., director, department of surgery, requesting transfer from courtesy staff to active staff.—1 page

(185) Letter dated January 22, 1980, from Henry A. Yeager M.D., chairman, committee on nutritional support, to Dr. Larkin regarding grant of temporary privileges to committee on nutritional support.—1 page

(186) Letter dated July 22, 1980, from John C. Sanner M.D. to Dr. Larkin regarding certification by American Board of Surgery.—1 page

(187) Letter dated October 8, 1979, from William A. Steinbach M.D., director, Department of Surgery, to John C. Sanner M.D. regarding credentials of Dr. Larkin.—1 page

(188) Memo dated October 2, 1979, from John C. Sanner M.D., vice president, medical affairs, regarding grant of temporary privileges to Dr. Larkin.—1 page

(189) Letter dated September 18, 1979, from John C. Sanner M.D. to Robert L. Lambert M.D., medical director, Pennsylvania Hospital Insurance Company, regarding qualifications of Dr. Larkin.—1 page

(190) Memorandum dated September 18, 1979, to operating room supervisor regarding Dr. Larkin's assistance of Dr. Ferraro.—1 page

PR* (191) Letter dated November 8, 1979, from Donald E. Klotz M.D., director, surgical training program, of the New York Down State Medical Center, regarding evaluation and opinions concerning qualifications of Dr. Larkin.—2 pages.

PR* (192) Letter dated October 30, 1979, from Irving Enquist M.D., director, surgical services, The Methodist Hospital, Brooklyn, to John C. Sanner M.D. regarding evaluations and opinions concerning qualifications of Dr. Larkin.—1 page

PR* (193) Letter dated August 24, 1979, from John C. Sanner M.D. to The Methodist Hospital regarding evaluation of Dr. Larkin.—2 pages.

(194) Letter dated August 24, 1979, from John C. Sanner M.D. to Dr. Larkin regarding interview with Dr. William A. Steinbach, director, Department of Surgery.—1 page

(195) Letter dated August 24, 1979, from John C. Sanner M.D. to The Methodist Hospital regarding evaluation of Dr. Larkin.—1 page

(196) Letter dated September 24, 1979, from coordinator of house staff activities at King's County Hospital to John C. Sanner M.D. regarding Dr. Larkin's completion of internship.—1 page

(197) Letter dated August 24, 1979, from John C. Sanner M.D. to chief of staff, University Hospital, regarding Dr. Larkin's internship.—1 page

(198) Letter dated September 4, 1979, from David Kaplan M.D., assistant dean, Down State Medical Center, to John C. Sanner M.D. regarding Dr. Larkin's application for appointment to medical staff.—1 page

(199) Letter dated August 24, 1979, from John C. Sanner M.D. to dean of medicine, State University at Down State Medical Center, regarding Dr. Larkin's request for privileges.—1 page

(200) Letter dated August 27, 1979, from John C. Sanner M.D. to Dr. Larkin requesting completion of surgical control sheet.—1 page

(201) Letter dated October 19, 1982, from Patrick J. Ferraro M.D., director, critical care, to Dr. Larkin regarding trauma committee meeting.—1 page

PR* (202) Confidential correspondence dated April 13, 1982, from Randall Snyder M.D., president of medical staff, to William A. Steinbach M.D., director, department of surgery, regarding opinions and evaluation of cases of Dr. Vincent Larkin.—1 page

(203) Letter dated July 18, 1983, from Jean Ann Simone to Dr. Larkin regarding itemization of continuing medical education credits.—1 page

(204) Letter dated May 25, 1983, from Dr. Larkin to Patrick J. Ferraro, chairman, trauma committee, regarding resignation from trauma team.—1 page

(205) Letter dated September 21, 1981, from John C. Sanner M.D. to Sister M. Ryan, administrator, St. Joseph's Hospital, regarding a number of procedures performed by Dr. Larkin.—1 page

PR* (206) Confidential correspondence dated March 10, 1982, from William A. Steinbach M.D. to John C. Sanner M.D. regarding review of Dr. Larkin.—1 page

PR* (207) Review of procedures performed by Dr. Larkin—undated.—15 pages

(208) Internal Community Medical Center memorandum dated March 10, 1982, from Adrian J. Samojlowitz, president, Community Medical Center, to Randall W. Snyder M.D., president, medical staff, regarding section 2 of bylaws.—1 page

(209) Internal memorandum dated March 12, 1982, from Randall Snyder M.D. to Dr. Larkin regarding com-

mittee appointment pursuant to medical staff bylaws.—1 page

PR* (210) Confidential correspondence dated March 12, 1982, from Randall W. Snyder M.D. to Thomas Disilvio M.D. regarding review of Dr. Larkin.—1 page

PR* (211) Confidential memorandum dated March 12, 1982 from Randall W. Snyder M.D. regarding review of procedures performed by Dr. Larkin.—1 page

(212) Letter dated June 4, 1980 from Karen Czarkowski, secretary, continuing medical education, to Dr. Larkin regarding itemization of continuing medical education credits.—1 page

(213) Surgical control sheet dated October 5, 1979.—1 page