**Verna E. DODSON, Appellee**

v.

**Joanna M. DELEO, D.O. and Pinnacle Health Hospital D/B/A Pinnacle Health at Community General Osteopathic Hospital, Defendants,**

v.

**United States Surgical Corp., Tyco Healthcare Group LP, Tyco International Ltd., Additional Defendants**

**Appeal of: Pinnacle Health Hospital D/B/A Pinnacle Health at Community General Osteopathic Hospital**

Superior Court of Pennsylvania.

Argued Nov. 16, 2004.

Filed April 18, 2005.

motions." *Litt v. Rolling Hill Hospital,* 293    Pa.Super. 97, 437 A.2d 1008, 1009 (1981).

Derek D. Bahl, Harrisburg, for appellant.

Andrew Spears, Harrisburg, for Dodson, appellee.

Before: DEL SOLE, P.J., LALLY–GREEN, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Pinnacle Health Hospital, appeals from the trial court's May 13, 2004 order.[1] We reverse and remand.

¶ 2 The trial court found the following facts:

This case involves allegations of professional negligence by Plaintiff Verna Dodson against Defendant Doctor Joanna DeLeo. Plaintiff has alleged that Defendant Doctor's performance of a vertical banded gastroplasty on April 16, 2001, and the subsequent post-operative care, fell below the standard of care for a reasonable physician. Plaintiff has also asserted a claim against Defendant Pinnacle Health Hospitals d/b/a/ Pinnacle Health at Community General Osteopathic Hospital ("Pinnacle Health") for vicarious liability. The Plaintiff filed a Motion to Compel Answers and Production of Documents on September 8, 2003, and the Defendant responded that the requested documents were protected from discovery by the Peer Review Protection Act. After a hearing and *in camera* review of the disputed documents, this Court granted the Motion to Compel in part and denied it in part. Defendant asserts that this Court erred in ruling that Documents 12, 12A, 13 and 14 of the Defendant's January 16th Privilege Log were not protected from discovery by the Peer Review Protection Act, 63 P.S. § 425.1, *et seq.*

We initially note that we do not believe that our Order of May 13, 2004 involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from that Order will not materially advance the ultimate termination of the matter. Rather, an immediate appeal will delay the termination of this matter. We thus denied the Defendant's motion requesting that we certify the issue for permissive appeal on June 21, 2004.

.  .  .  .  .

We held a hearing in this matter on April 15, 2004 to allow the parties to present evidence in support of their arguments for and against discovery of certain documents included in the January 16 Privilege Log. Neither party presented any testimony whatsoever, although the Defendant did present the written statement of Amy Helmuth, R.N., M.S., who acted as a Nurse Manager at Pinnacle Health beginning in the summer of 1999 and later became the Performance Improvement Manager at Pinnacle Health in August 2001. According to her sworn statement, in her capacity as Performance Improvement Manager, Ms. Helmuth is the administrator who supports the activities for all peer review committees within the Pinnacle Health System. Ms. Helmuth's statement indicates that while she did not hold the position of Performance Manager when the Plaintiff's alleged injuries occurred in the spring and summer of 2001, she can state with certainty that Pinnacle's data collection, data retention, document retention, and quality assurance policies and procedures did not change, in any way material to this lawsuit, between the summer of 1999 and August of 2001. In her statement, Ms. Helmuth indicates that the documents in question were maintained within Dr. DeLeo's credentialing file.

.  .  .  .  .

While Ms. Helmuth's statement alleges that Documents 12, 12A, 13, and 14

---

1. Joanna M. DeLeo, United States Surgical Corp., TYCO Healthcare Group LP, and TYCO International, Ltd. have filed letters indicating that they take no position on the issues presented in this appeal.

were kept exclusively in Dr. DeLeo's credentialing file, this statement is not conclusive evidence, let alone competent evidence, to prove that these four documents were used in the determination of staff privileges. Furthermore, Ms. Helmuth's statement does not clearly identify the source of these documents, the persons who would have had access to the credentialing file, and whether or not any of these four documents were ever distributed or disseminated outside the credentialing file.

.    .    .    .    .

We determined that Documents 12, 12A, 13, and 14 were merely raw data gathered by a central source and later submitted to the Quality Assurance Committee. . . . We found that the information contained in Documents 12, 12A, 13, and 14 was data that would be available in patient records and did not contain information regarding any peer review.

Trial Court Opinion, 7/19/04, at 1–5.

¶ 3 Appellant raises a single issue for our review:

Whether the trial court erred in concluding that documents 12, 12A, 13 and 14 were discoverable when said documents are reports memorializing hospital peer review activity with respect to a given physician for a given year, were generated by a hospital department charged with gathering and generating peer review committee documents, were utilized exclusively for purposes of physician credentialing, and are therefore protected from discovery by the Peer Review

Protection Act, 63 Pa.C.S. § 425.1, *et seq.*

Appellant's Brief at 4.[2]

¶ 4 We first address Appellant's notice of appeal filed pursuant to Pa.R.A.P. 313.[3] Rule 313(b) provides as follows:

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b).

¶ 5 This Court has previously relied on the collateral order doctrine to exercise review of discovery orders involving privileged material. *Jones v. Faust,* 852 A.2d 1201, 1203 (Pa.Super.2004) (discovery order regarding confidential medical records appealable under collateral order doctrine); *see also, Gocial v. Independence Blue Cross,* 827 A.2d 1216 (Pa.Super.2003); *Dibble v. Penn State Geisinger Clinic, Inc.,* 806 A.2d 866 (Pa.Super.2002). We reasoned in *Jones* that, once disclosed, the confidentiality of potentially privileged information is irreparably lost. *Id.*

¶ 6 Appellant's description of the documents in question is as follows:

11. Document 12 is a Department of Surgery Quality Management Credentialing Report for the period January 1 through January 31, 2000. The report is specific to Dr. DeLeo, and details all of Dr. DeLeo's cases which were reviewed by the Quality Assurance Committee during the 2000 calendar year, as well as any action taken by the Quality Assurance Committee. These reports are generated by the Performance Im-

---

**2.** Appellant preserved this issue in a timely filed Concise Statement of Matters Complained of on Appeal. Pa.R.A.P.1925(b).

**3.** Appellee does not dispute that the instant matter is appealable pursuant to Pa.R.A.P. 313.

provement Department, are used exclusively for quality assurance purposes, and are utilized exclusively within a physician's credentialing file.

12. The next document, which we will call Document 12(a), did not appear on Defendant Pinnacle Health Systems's [sic] Log of Documents Submitted for *In Camera* review because it had not yet been placed in Dr. DeLeo's credentialing file at the time that undersigned counsel reviewed the documents in her file. Document 12(a) is a Department of Surgery Quality Management Credentialing Report for the calendar year 2001. Document 12(a) is exactly the same type of report detailed in the preceding paragraph. These reports are generated by the Performance Improvement Department, are used exclusively for quality assurance purposes, and are utilized exclusively within a physician's credentialing file.

13. Document 13 is the same sort of report as Documents 12 and 12(a), except that it concerns the 1999 calendar year. These reports are generated by the Performance Improvement Department, are used exclusively for quality assurance purposes, and are utilized exclusively within a physician's credentialing file.

14. Document 14 is the same sort of report as Documents 12, 12(a), and 13, except that Document 14 concerns the Department of Obstetrics and Gynecology, and pertains to the 1999 calendar year. These reports are generated by the Performance Improvement Department, are used exclusively for quality assurance purposes, and are utilized exclusively within a physician's credentialing file.

Affidavit of Amy Helmuth, 4/15/04, at ¶¶ 11–14.

■ ¶ 7 The sole issue in the instant matter is whether these documents are protected under the Peer Review Protection Act, 63 P.S. §§ 425.1–425.4. The trial court has ordered disclosure. If the trial court granted disclosure in error, the confidential nature of the alleged protected documents would be irreparably lost. We conclude, therefore, that collateral review is appropriate. *Jones.*

■ ¶ 8 We now turn our attention to Appellant's argument that the trial court erred in ordering disclosure of documents that are protected under the PRPA.

Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary.

*Zieber v. Bogert,* 565 Pa. 376, 773 A.2d 758, 761 n. 3 (2001).

¶ 9 In the instant matter, we must interpret the PRPA. Because this issue is one of statutory interpretation, we must determine whether the trial court committed an error of law. *Zane v. Friends Hosp.,* 575 Pa. 236, 836 A.2d 25, 30 n. 8 (2003). Our standard of review is *de novo. Id.* When interpreting statutes, our goal is to effectuate the intention of the legislature. *Id.* at 30. We do so primarily by looking to the plain language of the statute. *Id.* If the language of the statute is clear and unambiguous, we will not disregard it under the pretext of pursuing its spirit. *Id.*

¶ 10 The PRPA provides in relevant part as follows:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of

such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4.

▮▮ ¶ 11 The PRPA was enacted to facilitate self-policing in the health care industry. In *Young v. The Western Pennsylvania Hospital,* 722 A.2d 153 (Pa.Super.1998), the plaintiff alleged that the defendant hospital was negligent in granting staff privileges to a certain doctor. The plaintiff sought discovery of documents and deposition testimony pertinent to the hospital's review of the doctor's staff privileges. The trial court granted a protective order and quashed plaintiff's subpoena.

▮▮▮▮ ¶ 12 This Court explained that the PRPA "represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." *Id.* at 156, *quoting, Cooper v. Delaware Valley Medical Center,* 428 Pa.Super. 1, 630 A.2d 1 (1993), *aff'd,* 539 Pa. 620, 654 A.2d 547 (1995). The

PRPA is meant to facilitate comprehensive, honest, and potentially critical evaluations of medical professionals by their peers. *Id.* In light of the foregoing principles, we concluded that:

> Documents used in the determination of staff privileges are exactly the type of documents the legislature contemplated when drafting the Peer Review Protection Act. Granting, limiting, or revoking staff privileges is one of the strongest tools the medical profession uses to police itself.

*Id.* at 156. We also held that requests for documents covered under the PRPA must be clearly defined and narrowly tailored. *Id.* We affirmed the trial court's order, deeming plaintiff's document requests to be insufficiently specific. *Id.* at 157. *See also, Sanderson v. Bryan,* 361 Pa.Super. 491, 522 A.2d 1138, 1139 (1987) (plaintiff may not obtain peer review material not directly related to his case).

▮▮ ¶ 13 The PRPA does not, however, protect non-peer review business records, even if those records eventually are used by a peer review committee. In *Atkins v. Pottstown Memorial Med. Center,* 430 Pa.Super. 279, 634 A.2d 258 (1993), the plaintiff sought discovery of an incident report created after he suffered a fall. A risk manager created the incident report, and the evidence showed that the risk manager sometimes reviewed incident reports with the defendant hospital's quality assurance committee. The incident report was marked confidential and was not made a part of the plaintiff's patient records. *Id.* at 260. The trial court held that the incident report was privileged under the Peer Review Protection Act.

¶ 14 This Court reversed, reasoning as follows:

> This document contained information "otherwise available from original sources." It was not derived from nor

part of an evaluation or review by a peer review committee. It was, rather, a report of an incident based on information also available to plaintiffs. As such, the report did not come within the need for confidentiality which the statute was intended to provide. Indeed, it is questionable whether a risk manager is a "review organization" to whom the protection of the statute extends. The report, therefore, was a business record not subject to the confidentiality safeguards of the statute.

*Id.*

¶ 15 In the instant matter, Appellee Verna E. Dodson sought certain documents regarding the performance of Appellant DeLeo, whom Dodson has accused of malpractice. *Young* makes clear that the legitimate records of a peer review committee are privileged under the PRPA. *Atkins* makes clear that general business records do not become privileged merely because they are sent to a peer review department.

¶ 16 The trial court, as noted above, found that Appellants failed to demonstrate that the documents in question were entitled to the protection of the Peer Review Protection Act. The trial court found that the source of the information contained in the documents at issue was unclear and that the documents did not contain information pertinent to the peer review process:

> We determined that Documents 12, 12A, 13, and 14 were merely raw data gathered by a central source and later submitted to the Quality Assurance Committee. The mere fact that these documents were *submitted* to the Quality Assurance Committee does not make them part of a peer review proceeding or record of a peer review committee.

Trial Court Opinion, 7/19/04, at 4–5 (emphasis in original).

¶ 17 Appellants did not offer any testimony on this matter, choosing instead to rely upon an affidavit from Amy Helmuth, which we have quoted above. Helmuth is currently the Performance Improvement Manager for Appellant Pinnacle Hospital. According to the affidavit, Helmuth is an administrator of peer review activity within the Pinnacle Health System. Helmuth Affidavit, 4/15/04, at ¶ 3. The affidavit further alleges that the documents in question were generated exclusively for peer review purposes and were maintained exclusively within peer review files. *Id.* at ¶¶ 11–14.

¶ 18 We conclude that the respected trial court erred in ordering production of Documents 12, 12(a), 13, and 14. The Helmuth Affidavit makes clear that these documents were both generated and used exclusively by Appellant's peer review department. Furthermore, the Helmuth affidavit makes clear that these documents are not available elsewhere in Appellant's business records. Therefore, Documents 12, 12(a), 13, and 14 fall squarely within the protection of the PRPA. *Young. See also, Troescher v. Grody,* 869 A.2d 1014 (Pa.Super.2005) (PRPA protects documents generated for use by a hospital's credentialing committee).

¶ 19 Moreover, our own review of the documents supports our conclusion. The documents chart problems and potential problems with the doctor's performance. Each of these problems and potential problems is rated on a scale of one to five, with one indicating "No Problem" and five indicating "Deviation in patient management with adverse effects." Our review of the record reflects that the requested documents do indeed contain peer review material. The highly regarded trial court, therefore, abused its discretion in determining otherwise and in finding that the PRPA does not protect these documents. Thus, the trial court's order as it pertains

to Documents 12, 12(a), 13, and 14 is reversed.

¶ 20 That some of the information contained within these documents may be available from other sources does not alter the result. Clearly, a hospital cannot create protection for a document simply by sending it to the peer review committee. *Atkins*. On the other hand, documents generated by a peer review committee specifically for use in the peer review process are not discoverable simply because some of the information contained therein is available elsewhere. *Young*. To hold otherwise would have a-chilling effect on the peer review process and would clearly run afoul of the purpose of the statute.[4]

¶ 21 Accordingly, we conclude that the documents at issue are privileged under the PRPA. We reverse the trial court's order.

¶ 22 Order reversed. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

---

4. That the documents in question were generated by Appellant's peer review department distinguishes the instant case from *Atkins*, where we determined that the person who prepared the document in question was not part of the peer review department. We note that neither party relied upon *Atkins* in its brief.