**Byrns v. Urology Assocs. of the Poconos, Inc.**

---

558

C.P. of Monroe County, no. 1683 CV 2009.

*Howard M. Levinson,* for plaintiff.
*John G. Swatskoski,* for defendant.

ZULICK, *J.,* November 12, 2010—This is a medical malpractice action arising from injuries allegedly sustained by the plaintiff, Maureen Byrns ("Byrns") during the course of a medical procedure on March 26, 2007. On that date, Byrns underwent extracorporeal shock wave lithotripsy for the removal of a kidney stone. During this procedure, Byrns alleges that she suffered four fractured ribs resulting in a condition known as intercostal neuralgia or nerve pain in the area of the ribs.

Byrns filed a praecipe for writ of summons on February 26, 2009, and then a complaint on May 18, 2009, alleging medical negligence, corporate negligence, failure to obtain informed consent, and loss of consortium. On September 16, 2009, Byrns served interrogatories and a request for production of documents. The defendants responded with general objections, before serving Byrns with supplemental responses.

On June 3, 2010, Byrns filed two motions to dismiss the discovery objections, one directed to Pocono Ambulatory Surgery Center ("PASC") which had objected to Byrns' request for production of documents and to compel discovery, and another opposing the objections of Dr.

James Moyer ("Dr. Moyer") and Urology Associates of the Poconos ("Urology Associates") to the plaintiff's interrogatories and request for production of documents. PASC responded in opposition on June 21, 2010, and Dr. Moyer and Urology Associates followed in kind on June 24, 2010, amending their opposition on July 1, 2010. Arguments on this matter were heard on July 6, 2010. After argument, an order was entered for in camera review of contested documents. The parties have complied with that request.

The first issue before the court is whether Byrns' motion to dismiss PASC's objections to their request for production of documents should be granted. Specifically, Byrns seeks four documents which the PASC lists on a privilege log - PASC Nos. 000011, 000012, 000013-000014 and 000091 - and claims are protected from discovery under the attorney-client, work product and/ or peer review privileges. Byrns also requests any and all documents relating to communications with the joint commission on accreditation of Healthcare Organizations ("joint commission") regarding this matter.

The second issue presented is whether Byrns' motion to dismiss the objections of defendants Moyer and Urology Associates to Byrns' interrogatories and general request for production of documents should be granted. The defendants have objected to interrogatories nos. 8, 13, 29, 30, 31, 38, 39, 40, 41, 53, 54, 55 and 63 on various grounds.

The third issue before the court is whether the Moyer

and Urology Associates responses to interrogatories nos. 47, 48, 49, 50, 57 and 58 were complete and thus require no supplementation under the Pennsylvania Rules of Civil Procedure.

## I. PASC'S OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

PASC has filed a privilege log and has withheld four documents on claims of privilege. PASC contends that three of the four documents in dispute are protected by the attorney-client privilege and/or the work product doctrine. The first of these documents, identified as PASC No. 000011 on the defendant's privilege log, is described by PASC as notes made by Mary Hayden, administrative director of PASC, related to conversations with PASC's insurance carrier with specific references to requested legal advice. The second document, PASC No. 000012 on the privilege log, allegedly contains Hayden's personal thoughts and opinions following a meeting between herself and Byrns, which was allegedly recorded to assist her in later recollection and consulation with an attorney. The third document, PASC No. 000091, is a "Root Cause Analysis of Event," a series of conclusions after investigation by Hayden and other PASC representatives regarding this matter that were allegedly prepared for the purpose of being submitted to peer review or for counsel.

The question of whether attorney-client privilege protects a particular communication is a matter of law. *In re Estate of Wood*, 818 A.2d 568, 571 (Pa. Super. 2003). Therefore, it is for the trial court judge to decide whether

the communication is privileged or not. *Moore v. Bray*, 10 Pa. 519 (1849).

Recognizing the importance of the attorney-client privilege, the Pennsylvania general assembly codified it:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client. 42 Pa.C.S.A. § 5928.

In order to successfully invoke the protections of the attorney-client privilege, four elements must be satisfied:

> 1) The asserted holder of the privilege is or sought to become a client.

> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

> 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

> 4) The privilege has been claimed and not waived by the client. *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007); *Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995).

"The attorney-client privilege protects only those communications made by a client to his or her attorney that are confidential and made in connection with the providing of legal services or advice." *Nationwide*, 924 A.2d at 1264. Contrary to the parties' attempts to pass the burden off on each other, both share the responsibility in resolving a dispute over the disclosure of communications. As articulated by the Superior Court in *Nationwide*, there is a two-part, burden-shifting inquiry that has been used by the Pennsylvania Supreme Court to resolve these disputes. *Nationwide*, 924 A.2d at 1265-66 (citing *In re Investigating Grand Jury of Phila. County No. 88-00-3503*, 527 Pa. 432, 593 A.2d 402 (Pa. 1991)).

I directed PASC to produce these documents for an in camera review. Applying the four-part test enumerated above to document nos. 11,12 and 91, I find that the attorney-client privilege does not apply because the notes were not a communication to PASC's attorneys; rather they were memoranda documenting discussions with or about Maureen Byrns after PASC had been put on notice of her intent to claim damages.

PASC also contends that the documents should be protected because they are covered by the work-product doctrine. However, Pennsylvania Rule of Civil Procedure 4003.3 requires the production of information prepared in anticipation of litigation:

Rule 4003.3. Scope of discovery. Trial preparation material generally

Subject to the provisions of Rules 4003.4 and 4003.5, a

party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that otherparty's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. Pa.R.C.P. 4003.3.

"Under the 1978 amendments, subdivision (d) of Rule 4011 was rescinded and eliminated. This subdivision precluded the discovery of information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial, other than information as to the identity or whereabouts of witnesses. The discovery of trial preparation material is now allowable in accordance with Pa.R.C.P. 4003.3 through 4003.5." *McDevitt v. Terminal Warehouse Co.*, 450 A.2d 991, 1000 (Pa. Super. 1982); *Tate v. Philadelphia Sav. Fund Society*, 1 Pa. D. & C.4th 131, 135 (Phila.C.P.1987). PASC will be directed to produce the reports of Ms. Hayden at Nos. 11, 12 and 91.

The fourth document in dispute - PASC Nos. 000013-000014 - has been termed a "root cause analysis" by PASC, created as part of PASC's peer review process following

notice of Byrns' complaint with the joint commission about her procedure.

PASC contends this document is protected under the Peer Review Protection Act ("PRPA"), 63 P.S. § 425.1, et seq. Concerning the confidentiality of the review organization's records, the PRPA states:

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings. P.S. §425.4.

The Peer Review Protection Act "represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities." *Young v. Western Pa. Hosp.*, 722 A.2d 153, 156 (Pa. Super. 1998) (quoting *Cooper v. Delaware Valley Med. Ctr.*, 630 A.2d 153, 156 (Pa. Super. 1993)). The "proceedings and records of a review committee" are protected. *Id.* at 155. However, the PRPA does not protect information, documents or records otherwise available from original sources simply because they were presented before a review committee. See 63 P.S. § 425.4.

The party asserting the privilege, here PASC, has the burden to establish the requested documents were produced by a "review committee" during the course of a "peer review" as defined by the PRPA. See *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 32 (Pa. Commw. 2001). The PRPA defines a "review committee," in pertinent part, as:

> Any committee engaging in peer review...established... to gather and review information related to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep with reasonable bounds the cost of health care. *It shall also mean any hospital board, committee or individual reviewing* the professional qualifications or activities of its medical staff or applicants for admission thereto. 63 P.S. § 425.2 (emphasis added).

The PRPA defines "peer review," in pertinent part, as:

The procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations. 63 P.S. §425.2.

Based on a plain reading of the PRPA and its definitions, PASC has sustained its burden and has established that the "Root Cause Analysis" was produced by a review committee during the course of a peer review. As the administrator and corporate representative of PASC, Ms. Hayden, who is also a registered nurse, falls squarely within the definition of "professional health care provider." See 63 P.S. § 425.2. Ms. Hayden was acting within that capacity when she generated the analysis for the purpose of peer review. As an individual reviewing the activities of her medical staff, Ms. Hayden also qualifies as a "review committee."

As the Superior Court has said, hospitals cannot create protection for a document simply by sending it to a peer review committee. *Dodson v. Deleo*, 872 A.2d 1237, 1244 (Pa. Super. 2005). However, "documents generated by a peer review committee specifically for the use in the

peer review process are not discoverable simply because some of the information contained therein is available elsewhere." *Id.* Because the "root cause analysis" was created for the express purpose of evaluation by a professional health care provider, it is protected by the PRPA. The documents used to create the report, however, are discoverable.

Byrns contends that PACS waived its peer review protections because Mary Hayden sent a letter to Maureen Byrns which disclosed the report's conclusion that there was no failure to meet the appropriate standard of care in Ms. Byrns' case. A privilege may be waived if a party to the confidential information disclosed the information to a third party. See *Sprague v. Walter*, 656 A.2d 890 (Pa. Super. 1995); *Rosser v. Feldman*, 38 Pa. D. & C.4th 353, 355 (Pa.Com.Pl. 1998). Although the letter disclosed that conclusion, it did not disclose the nature of the investigation or facts determined in the investigation. I find no waiver of confidentiality of the investigation and factual findings in the peer review process. Because I have found the "root cause analysis" is protected by the PRPA, it is unnecessary to determine if it is protected under the work product doctrine. Plaintiffs' request for production of this document will be denied.

Byrns further requests the defendants turn over a copy of the complaint she filed with the joint commission. As Byrns already has a copy of this report and only seeks PASC's copy to determine when PASC came into possession of the report, Byrns is directed to ascertain that

information by deposition.

Accordingly, Byrns' motion to dismiss the defendants' objections to plaintiffs' specific request for production of documents and to compel discovery will be granted in part and denied in part.

## II. OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION AND INTERROGATORIES FROM UROLOGY ASSOCIATES AND DR. MOYER

Co-defendants Urology Associates and Moyer have objected to Byrns' request for production of document nos. 1, 2, 6, 9 and 16, as well as Byrns' interrogatories nos. 8, 13, 29, 30, 31, 38, 39, 40, 41, 53, 54, 55 and 63. They contend that Byrns is seeking documents and information that do not exist, have already been provided, or are protected by the attorney-client privilege and work-product doctrine.

Document request no. 1 asks for witness statements relating to the incident, while document request no. 2 asks for statements of any of the parties herein. The defendants contend that no such statements or a written record of such statements exist. Therefore, the defendants' objection to these requests is denied as moot, other than the results obtained from the court's in camera review of the privilege log as discussed infra.

Document request no. 2 requests statements by the parties. Defendants have advised that they do not have any statements by parties, so this request is therefore moot as well, subject to an obligation to disclose later-discovered materials.

Document request no. 6 specifically requests "All documents relating to the investigation of the occurrence prepared on behalf of any party herein, including all notes, file memoranda, or any other document prepared by any representative acting on behalf of any of the parties herein." The defendants contend the information sought by this request is protected by the attorney-client privilege, the work product doctrine and/or the PRPA. The court directed defendants to produce a privilege log, which they have done. Having reviewed the documents listed, the court rules as follows:

001 A transmittal letter from Dr. Moyer to his attorney. The objection will be sustained as this document is covered by the attorney-client privilege.

002-003 A fax cover sheet dated July 29, 2008 to Len Leer of PMSLIC, which appears to contain no relevant information. The objection will be sustained.

004 Letter from Len Leer to Dr. Moyer on July 30, 2008. This objection will be denied and the document shall be produced.

005 Hand-written memo dated July 29, 2008 from Dr. Moyer. This objection will be denied and the document shall be produced.

006 Memo to file from Dr. Moyer. This objection will be denied and the document shall be produced.

007 Memo to file from Dr. Moyer. This objection will be denied and the document will be produced.

008 Memo to file from Dr. Moyer. This objection will be denied and the document will be produced.

Document request no. 9 asks for any documents that weigh the relative fault of the plaintiffs and defendants in this matter. The defendants contend that, notwithstanding implications of the attorney-client privilege, work product doctrine and PRPA, their investigation into this matter is still ongoing and they are unaware of the existence of any such documents. Therefore, the defendants' objection to these requests is sustained, subject to the defendant's continuing obligation to supplement responses pursuant to Pa.R.C.P. 4007.4

Document request no. 16 asks for "all correspondence sent to or received from any insurance companies [sic] in regard to the plaintiff, Maureen Byrns." This request has been addressed by the discussion of Request No. 6.

Defendants have also objected to some of plaintiffs' interrogatories. Interrogatory No. 8 asks whether the defendants have obtained statements from any person regarding this matter. The defendants contend they are unaware of the existence of any oral or written statements, as "statements" is defined by Pa.R.C.P. 4003.4, other than the documents addressed above. This question has been answered.

Interrogatory no. 13 asks whether the defendants have received any information that states the defendants were negligent in attending to and caring for Byrns. The defendants contend they have received no such

information. Accordingly, the defendants' objection to this interrogatory is sustained.

Interrogatory no. 29 asks for the names and addresses of anyone who has knowledge of facts concerning Byrns' procedure. The defendants contend that all of the information sought in this interrogatory is available in Byrns' medical records, which should be in Byrns' possession. Therefore, the plaintiffs' request for additional information is denied.

Interrogatory no. 30 asks a yes or no question: "Have you, or anyone on your behalf, conducted any investigations of the medical treatment which is the subject matter of this action?" The defendants have answered in the affirmative, and noted that the investigation is ongoing. Accordingly, the plaintiffs' request for additional information is denied.

Interrogatory no. 31 follows directly from No. 30 in the event of an affirmative response, requesting the names and addresses of those who conducted the investigation, the dates of the investigation, the dates of any reports based on those investigations and a request to produce those reports. The defendants contend that Dr. Moyer did not perform any investigation into the matter, other than continuing to provide care for Byrns as she dealt with her symptoms related to her kidney stones following her lithotripsy. The defendants have withheld some reports as discussed above, which have already been addressed.

Interrogatories nos. 38, 39 and 40 are related inquiries that probe into possible defenses the defendants might raise. No. 38 asks the defendants to set forth any facts supporting the basis of their denial, if they are denying negligence. No. 39 asks if the defendants claim whether Byrns was contributorily or comparatively negligent and/ or assumed the risk, while no. 40 follows up on no. 39 and asks the defendants to state their contentions for claiming Byrns was at least partially at fault. The defendants satisfied the query of no. 38 in their answer to Byrns' complaint, denying all of the material allegations of negligence set forth in the complaint. The defendants further provided the answers to interrogatories nos. 39 and 40 in their new matter response to the plaintiff's complaint, raising the affirmative defenses of assumption of the risk, contributory negligence and comparative negligence. Accordingly, the plaintiffs' request for additional answers is denied.

Interrogatories nos. 41, 53, 54 and 55 seek specific information regarding the performance of Byrns' lithotripsy. No. 41 asks for the defendants to identify all persons who were present during Byrns' lithotripsy, while no. 53 seeks an explanation of how Byrns' rib fractures occurred. No. 54 asks the defendants whether they acknowledge the rib fractures occurred during the lithotripsy, and no. 55 asks the defendants whether they deny these fractures occurred during the performance of the lithotripsy. The defendants' answers and brief note that Dr. Moyer was not present for the lithotripsy and that "the medical records indicate that the rib fractures

occurred sometime after the lithotripsy was administered." (Defendant's brief, page 18). Defendant's answer refers to plaintiff's medical records. Plaintiffs' request for additional information is denied.

### III. OBJECTIONS TO INTERROGATORY RESPONSES ON GROUNDS THEY ARE INCOMPLETE

While not offering any reasons why or supporting case law, Byrns maintains that the responses of Dr. Moyer and Urology Associates to interrogatories nos. 47, 48, 49, 50, 57 and 58 are incomplete and must be supplemented. Nos. 47 and 48 ask the defendants to identify the equipment and manufacturer of the equipment used during Byrns' lithotripsy. As PASC owns, operates and maintains the equipment used, it was appropriate for Dr. Moyer and Urology Associates to instruct the plaintiff to direct any questions about the equipment to PASC, the third defendant in this case. As the owner and operator of the equipment, PASC is in the best position to answer any questions relating to it. Accordingly, the responses of Dr. Moyer and Urology Associates to interrogatories nos. 47 and 48 were complete and need not be supplemented.

Interrogatories nos. 49 and 50 ask the defendants if it is their contention that the equipment used during Byrns' lithotripsy was defective or malfunctioned, and if so, to detail the basis of the claim. At the time the defendants responded, they were still in the midst of their investigation and were unable to answer definitively. Perhaps without

intending to, the defendants have already provided a more complete answer in their amended response in opposition to the plaintiff's motion to dismiss the objections of the defendants. Based on their continued investigations into the matter, the defendants have determined they have no information that would lend itself to the idea that equipment malfunction led to Byrns' rib fractures. That in and of itself is a complete response to interrogatories nos. 49 and 50.

Interrogatories nos. 57 and 58 ask the defendants whether Byrns was warned, prior to the procedure, that fractured ribs were a risk of lithotripsy, and if so, who warned her, the date she was warned and the substance of the warning. While seemingly straightforward questions, the defendants were slightly evasive in their response: "All professionally-indicated disclosures were made to plaintiff. She gave her informed consent to the procedure." The defendants contend that rib fractures are not a known risk associated with lithotripsy, which, if true, should have elicited a response related to that fact, rather than a vague generalization. Accordingly, the defendants are ordered to provide a more complete response to interrogatories nos. 57 and 58, pursuant to Pa.R.C.P. 4006(a)(2).

An order will follow.

## ORDER

And now, November 12, 2010, upon consideration of the parties' briefs and arguments on plaintiffs' motions to compel discovery, it is ordered as follows:

1. Plaintiffs' motion to compel discovery from PASC is granted in part and denied in part. PASC is directed to produce the reports of Ms. Hayden at identified as nos. 11,12 and 91 in the privilege log. Plaintiffs' request for production of the root cause analysis report at nos. 13 and 14 of the privilege log is denied.

2. Byrns' request that PASC turn over a copy of the complaint Maureen Byrns filed with the joint commission is denied.

3. Byrns' request for production of the following documents by Urology Associates and Dr. Moyer is granted and these documents shall be produced:

004 Letter from Len Leer to Dr. Moyer on July 30, 2008.

005 Hand-written memo dated July 29, 2008 from Dr. Moyer.

006 Memo to file from Dr. Moyer.

007 Memo to file from Dr. Moyer.

4. Defendants Urology Associates and Dr. Moyer are ordered to provide a more complete response to plaintiffs' interrogatories nos. 57 and 58.

5. All other requests for production of discovery sought by plaintiffs is denied.