2015 PA Super 169

| | |
|---|---|
| ANNE MARIE VENOSH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JACK HENZES M.D., CINDY ANDERSON, PA-C; SCRANTON ORTHOPEDIE SPECIALISTS, P.C. AND MOSES TAYLOR HOSPITAL, | |
| APPEAL OF: BLUE CROSS OF NORTHEASTERN PENNSYLVANIA AND FIRST PRIORITY HEALTH, | |
| Appellants | No. 1393 MDA 2014 |

Appeal from the Order Entered August 8, 2014
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 11 CV 3058

BEFORE:  BOWES, DONOHUE AND ALLEN, JJ.

OPINION BY BOWES, J.:                    **FILED AUGUST 07, 2015**

Blue Cross of Northeastern Pennsylvania ("Blue Cross") and its affiliate First Priority Health ("First Priority") appeal from the August 8, 2014 discovery order requiring Blue Cross to produce information concerning a quality-of-care review that it conducted regarding the incident at issue in this medical malpractice case.  The trial court rejected Blue Cross's

invocation of the privilege established by the Pennsylvania Peer Review Protection Act, 63 P.S. § 425.1, *et seq*. (the "Act").[1]  We affirm.

On May 13, 2011, Ann Marie Venosh ("plaintiff") instituted this lawsuit by filing a complaint against Dr. Jack Henzes, Cindy S. Anderson, Scranton Orthopedic Specialists P.C., and Moses Taylor Hospital ("Taylor") (collectively the "defendants").  She averred the following.  Dr. Henzes was an orthopedic surgeon and Ms. Anderson was a physician's assistant engaged in the practice of orthopedic medicine.  Scranton Orthopedic Specialists P.C. employed them both.  On June 11, 2009, Dr. Henzes and Ms. Anderson performed total knee replacement surgery on plaintiff's left knee at Taylor.  During that surgery, Dr. Henzes caused an occlusion of the left popliteal artery, which a vascular surgeon immediately repaired.  Due to the occlusion, the plaintiff suffered from left foot drop, peroneal neuropathy, and left-leg numbness, weakness, muscle spasm, swelling, pain, nerve damage, cramping induced by exercise, and functional limitations.

After the pleadings were closed, the parties began to conduct discovery.  On August 13, 2013, the plaintiff served Blue Cross with a subpoena seeking records relating to her surgical treatment, including any

---

[1]  Since the order compelled Blue Cross to produce materials that it contended were privileged, the order is immediately appealable as a collateral order.  **Yocabet v. UPMC Presbyterian**, 2015 WL 3533851, n.1 (Pa.Super. 2015).

investigative records. Following a request by Blue Cross, the plaintiff disseminated the same subpoena to First Priority. Blue Cross withheld materials relating to a quality-of-care review that it conducted of the medical providers and the incident at issue. It moved to quash the subpoena as to any documents related to that review. The discovery matter was referred to a special master, who concluded that the Act's privilege applied. The plaintiff appealed to the court of common pleas, which reversed the special master and ordered Blue Cross to produce the investigative materials. Blue Cross and First Priority filed the present appeal, and the trial court agreed to stay its order pending resolution of this appeal. Appellants present this issue:

Did the trial court err as a matter of law in holding that

> Pennsylvania's Peer Review Protection Act, which expressly applies to "hospital plan corporation review committees and to "health insurance review committees," 63 P.S. § 425.2, can never apply to peer reviews initiated by and performed for a hospital plan corporation (or any other health insurance company that is not itself a professional health care provider), even where the individuals who actually serve on the committee meet the Act's definition of "professional health care provider"?

Appellant's brief at 7.

In this appeal, we must determine whether the Act's confidentiality provision protects from discovery the materials from the review process conducted by Blue Cross. Interpretation of a statute is "a question of law; thus, our standard of review is *de novo,* and the scope of our review is

- 3 -

plenary." *Yocabet v. UPMC Presbyterian*, 2015 WL 3533851, 3 (Pa.Super. 2015).

The facts are not contested. First Priority was the plaintiff's medical insurer at the time of the surgery and is an independent practice type of health maintenance organization (IPA-HMO). First Priority is a subsidiary of Blue Cross, which sells health insurance. Blue Cross has procedures whereby it can conduct review of the medical treatment delivered by the health care providers with which it contracts. The primary purpose of that review process is to ensure that Blue Cross's insureds are receiving the appropriate level of medical care from the health care providers.

The medical director of Blue Cross, after a recommendation from a nurse analyst, implemented that review procedure with respect to the surgery involving the plaintiff. The medical director, a nurse, and an orthopedic surgeon conducted the examination of the medical care given to the plaintiff. Blue Cross claims that the Act's confidentiality provision applies to any materials relating to its review of the medical care provided to the plaintiff.

We observe first that the purpose of that Act is to "to facilitate **self-policing** in the **health care industry**." *Dodson v. DeLeo*, 872 A.2d 1237, 1242 (Pa.Super. 2005) (emphases added). We have noted that, the Act itself expresses the legislature's conclusion that the "**medical profession** itself is in the best position to police its own activities." *Id.* (emphasis

added); ***Sanderson v. Frank S. Bryan, M.D., Ltd.***, 522 A.2d 1138, 1139 (Pa.Super. 1987) ("The medical profession exercises self-regulation. The most common form of such regulation in the health care industry is the peer review organization.").

The Act provides that the "proceedings and records of a review committee shall be held in confidence[.]" 63 P.S. § 425.4. A review committee is identified in the Act as "any committee engaging in peer review[.]" 63 P.S. § 425.2. Peer review is defined as "a procedure for evaluation **by professional health care providers**" of the quality and efficiency of services ordered or performed by other "professional health care providers." 63 P.S. § 425.2 (emphasis added). Accordingly, under the express terms of the Act, "peer review occurs only when one professional health care provider is evaluating another professional health care provider." ***Yocabet***, ***supra***.

In the present appeal, Appellants admit that they are not professional health care providers as defined in the Act. Indeed, ***McClellan v. Health Maintenance Organization****,* 660 A.2d 97 (Pa.Super. 1995), *aff'd by an equally divided court,* 686 A.2d 801 (Pa. 1996), is controlling. That case involved a medical malpractice lawsuit brought against a doctor and an IPA-HMO. It was alleged that the doctor delivered substandard medical care and that the IPA-HMO committed corporate negligence due to its failure to retain competent doctors and to review the quality of health care services delivered

by its doctors. The plaintiffs filed a request for production of documents, and the HMO-defendant invoked the confidentiality provision of the Act as to the materials.

The **McClellan** panel unanimously concluded that the privilege did not apply because the HMO in question was not a professional health care provider as defined in the Peer Review Act. We noted therein that an IPA-HMO "contracts for delivery of services with a partnership, corporation, or association whose major objective is to enter into contractual arrangements with health professionals for the delivery of such health services." *Id.* at 101 (citation omitted). An IPA-HMO is not a professional health care provider as defined in the Act. This Court concluded that an IPA-HMO could not be considered a professional health care provider because it does not deliver any type of medical services. The **McClellan** court refused to read into the Act's definition of professional health care provider any "medical institutions or groups . . . that are not specifically identified by the legislature." *Id.* at 102. **Accord Yocabet**, **supra** (review of a kidney transplant conducted by the State Department of Health on behalf of the federal government was not peer review because it was not review conducted by a health care provider.).

Likewise, herein, Blue Cross does not provide health care services; it sells health insurance. It admittedly is not a professional health care provider as defined by the Act or the case law interpreting the Act. Hence,

its quality-of-care review of medical services delivered by one of its contracting physicians did not constitute peer review as defined in the Act. Blue Cross was not a member of the medical care profession involved in self-policing. It was an organization deciding whether its affiliate IPA-HMO should continue to contract with the health care providers in question. The privilege is both facially inapplicable and the intent behind the Act is not fulfilled by a finding that Blue Cross's decision to examine the care provided constituted peer review.

Appellants present the following positions. First, they contend that, even though Blue Cross and First Priority admittedly are not health care providers, the review process that Blue Cross initiated constituted peer review because the definition of a review committee includes hospital plan corporation review committees and health insurance review committees. 63 P.S. § 425.2. The pertinent provision relied upon by Appellant is as follows:

> "Review organization" means any committee engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, **a health insurance review committee**, **a hospital plan corporation review committee**, a professional health service plan review committee, a dental review committee, a physicians' advisory committee, a veterinary review committee, a nursing advisory committee, any committee established pursuant to the medical assistance program, and any committee established by one or more State or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board,

committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing the operation of hospitals, nursing homes, convalescent homes or other health care facilities.

63 P.S. § 425.2. (emphases added). Blue Cross is a hospital plan corporation and contends that the committee that it formed to conduct the quality-of-care review thus constituted a review organization.

Appellants omit a step in their construction of the statute in question. As **McClellan** and **Yocabet** clearly provide, the definition of peer review requires that it be initiated by a professional health care provider. A review committee is a committee that conducts peer review. A review committee cannot be conducting peer review unless that review is being performed by a professional health care provider. We specifically observed in **Yocabet** that a professional health care provider could appoint or retain an external committee to conduct peer review and that review would still constitute peer review.

Thus, a professional health care provider could ask a hospital plan corporation or health insurance provider to perform review of medical services. That committee would be a review committee, and its review process would be confidential under the Act. For example, if Taylor had asked Blue Cross to review the surgery in question, that review would constitute peer review. Taylor, a hospital, falls within the definition of a

professional health care provider. A committee that is initiated at its request to review health care would be a peer review committee even though review was performed by a committee appointed by a health insurance company or a hospital plan corporation. Herein, the medical director of Blue Cross initiated the review process in question. Under *McClellan*, that process is not peer review because it was not conducted by a professional health care provider.

Additionally, a review committee is operating as such only when its goal is "to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care." 63 P.S. § 425.2 Herein, Blue Cross was deciding whether to keep Dr. Henzes and Ms. Anderson as contracting health care service providers. None of the above stated purposes was present in its quality-of-care review.

Appellants also note that the review in question was actually conducted by health care providers consisting of Blue Cross's medical director, a nurse, and an orthopedic surgeon. This contention was directly addressed in *Yocabet*, *supra*. Therein, we noted that the fact that an entity that is not a professional health care provider, as outlined in the Act, hires health care providers, as defined in the Act, does not convert a review

process into peer review. We noted that peer review can be initiated only by a professional health care provider so the question of who the professional medical provider appoints or hires to conduct the review is irrelevant. For example, a person who is not a health care provider can be involved in the process and it remains peer review. *Piroli v. Lodico*, 909 A.2d 846 (Pa.Super. 2006) (fact that billing manager was present during a peer review proceeding conducted by a professional health care provider did not render the Act's confidentiality provision inapplicable).

Appellants finally maintain that *McClellan* is not precedential. In citing *McClellan*, they continually reference the non-precedential Supreme Court decision wherein the Superior Court was affirmed by an equally divided Court. However, the Superior Court panel decision was unanimous and published, and Appellants' arguments that the Supreme Court decision in question is not precedential does not confront the fact that the Superior Court decision remains precedential .

Furthermore, *McClellan* is directly on point and holds that a corporation that provides health insurance and not medical care is not a professional health care provider. That decision further states that unless an entity is a professional health care provider, it does not conduct peer review, and any review conducted by such an organization is not confidential under the Act.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2015