J-A23011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PREMIER COMP SOLUTIONS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| UPMC HEALTH NETWORK, INC., A PENNSYLVANIA NON-PROFIT CORPORATION, UPMC BENEFIT MANAGEMENT SERVICES, INC., D/B/A UPMC WORKPARTNERS, UPMC HEALTH BENEFITS, INC., D/B/A UPMC WORKPARTNERS, MCMC, LLC, A WHOLLY-OWNED SUBSIDIARY OF YORK RISK MANAGEMENT, AND ALIGN NETWORKS, A WHOLLY-OWNED SUBSIDIARY OF ONE CALL CARE MANAGEMENT | |
| APPEAL OF:  UPMC HEALTH NETWORK, INC., A PENNSYLVANIA NON-PROFIT CORPORATION, UPMC BENEFIT MANAGEMENT SERVICES, INC., D/B/A UPMC WORKPARTNERS, UPMC HEALTH BENEFITS, INC., D/B/A UPMC WORKPARTNERS | |
| | No. 1398 WDA 2015 |

Appeal from the Order Dated August 13, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-15-007257

BEFORE:  LAZARUS, J., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 10, 2017**

---

[*] Retired Senior Judge assigned to the Superior Court.

UPMC Health Network, Inc., a Pennsylvania non-profit corporation, UPMC Benefit Management Services, Inc., D/B/A UPMC WorkPartners, and UPMC Health Benefits, Inc., D/B/A UPMC WorkPartners (collectively, "UPMC") appeal from the order, entered in the Court of Common Pleas of Allegheny County, which lifted a previously entered confidentiality order. Upon review, we quash.

The trial court summarized the relevant factual background as follows:

> Premier Comp Solutions, LLC ("PCS") is a limited liability company that provides workers' compensation cost containment solutions and services to insured employers, self-insured employers, third party administrators and insurance companies. PCS services include panel development[1] and maintenance, injury management, medical bill reviews and re-pricing, and physical therapy and diagnostic network access.
>
> UPMC Benefit Management Services, Inc. (d/b/a UPMC WorkPartners) [("Benefit Management Services")] provides Third Party Administrative ("TPA") and other services to Pennsylvania employers, including governmental agencies that have the financial qualifications to be self-insured for workers' compensation expenses. UPMC [Health Benefits, Inc.] (d/b/a UPMC WorkPartners) [("Health Benefits")] also sells workers' compensation insurance to employers in Pennsylvania by contracting with brokers who work on commission.
>
> MCMC[, LLC,] and Align Networks ("Align") are competitors of PCS. MCMC provides medical bill review and re-pricing services, while Align provides panel generation and maintenance services

---

[1] A provider panel is a list of names and contact information for at least six health care providers that are geographically accessible to the insured employer's location and have specialties that are based on the anticipated work injuries of the employees of the insured employer.

With respect to TPA contracts with public agencies, prime contracts must request disapproval in writing from the public agency to terminate a contract with a Disadvantaged Business Enterprise ("DBE") subcontractor. PCS has been identified as a DBE subcontractor for WorkPartners.

. . .

In 2006, PCS entered into a Medical Bill Review and Re[-]pricing Agreement with WorkPartners, in which PCS would review and re-price medical bills submitted by UPMC WorkPartners in accordance with the Pennsylvania Workers' Compensation Act. The agreement included language that stated that the parties agreed to hold in confidence any of the trade secrets, designs, improvements, inventions, data or information belonging to the others.

In 2010, Health Benefits was approved as a workers' compensation insurance carrier, which caused the business of providing TPA services to be divided between WorkPartners and Health Benefits so that UPMC Health Benefits was recognized as the name of UPMC's workers' compensation insurance carrier.

In August 2010, Health Benefits decided to utilize PCS for panel development, maintenance, appointment scheduling, telephonic injury management, and network access for their insureds, while still developing its own panels located near UPMC's hospitals and physician practices.

In July 2012, WorkPartners and Health Benefits decided to use PCS'[] physical therapy and diagnostic network for the majority of their employer clients and insureds. Health Benefits was able to take advantage of the discounts available through the use of the PCS network by having all of PCS'[] physical therapy and MRI network providers send all bills submitted by Health Benefits' claimants directly to PCS.

In February 2014, WorkPartners sought to have PCS perform an extensive medical bill review and re-pricing test audit to determine whether PCS or MCMC provided the best service and savings. In the process, WorkPartners requested that PCS provide detailed explanations and supporting documentation for its decisions. PCS complied. Again, in response to requests made by WorkPartners, PCS later provided information about their medical providers, including tax ID numbers and PCS'[] unique identifier keys.

On September 15, 2014, PCS CEO Linda Schmac noted that PCS had not received an employer panel referral from Health Benefits since August 27, 2014.

On November 13, 2014, WorkPartners advised PCS that MCMC would receive the re-pricing contract. At the same meeting, PCS was informed that Health Benefits would begin to use Align and not PCS for all of its insureds' new panel development, PT and MRI/CT services. WorkPartners also informed PCS that Align had been doing panel development for Health Benefits since August 27, 2014.

Neither MCMC nor PCS are able to sign agreements with UPMC[,] which would require them to access WorkPartners' exclusive PPO network discounts in a primary position[,] due to their respective PPO network access contracts with Coventry, the largest workers' comp network in the nation.

Although WorkPartners had decided to use the services of MCMC and Align rather than PCS, on February 17, 2015, WorkPartners sent PCS a proposed Master Services Agreement which PCS opted not to sign. Consequently, PCS requested on February 27, 2015[,] that the electronic data provided to WorkPartners by PCS be returned and that a certification be provided stating that none of the data had been provided to Align.

On March 26, 2015, Health Benefits and Benefit Management Services sent a letter to PCS terminating both their business relationship and their 2006 contract. The following day, Health Benefits wrote to the brokers who sell Health Benefits' insurance policies and advised that effective April 30, 2015, Health Benefits had terminated its relationship with PCS and would be partnering with two new vendors for re[-]pricing and panel generation services. On April 14, 2015, WorkPartners notified PCS that it considered the termination of the 2006 Agreement to also terminate the subcontract agreements PCS held with the City of Pittsburgh, Port Authority, and the Pennsylvania Turnpike Commission under WorkPartners' TPA contracts.

On April 22, 2015, PCS filed its [c]omplaint, raising six counts against [UPMC, MCMC, and Align, including multiple claims of breach of contract, violation of the Pennsylvania Uniform Trade Secrets Act, tortious interference with contractual or beneficial business relationships, fraudulent misrepresentation, and conspiracy.]

- 4 -

On April 27, 2015, [the] court entered an order directing [UPMC] to produce to [PCS an 18-page long 2014 Report and Analysis ("18-Page Report").] The 18-Page Report is an internal report drafted by a WorkPartners employee in April of 2014. The 18-Page Report was produced to PCS and stamped as "CONFIDENTIAL SUBJECT TO COURT ORDER."

On June 30, 2015, PCS filed a "Renewed Motion to Lift Confidentiality Order Regarding the 18-Page Report[,]" [which the court granted on August 13, 2015.]

Trial Court Opinion, 1/29/16, at 2-6.

UPMC filed a timely notice of appeal and court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

UPMC raises the following issue for our review:

Whether the trial court erred in granting Plaintiff/Appellee PCS'[] Motion to Lift a Confidentiality Order and authorizing PCS to disseminate a confidential internal document, produced subject to a prior [o]rder directing that the document be used only for purposes of litigation and not provided to any third party, in order to "set the record straight" and "remedy the damage being done to the business" of PCS before any jury determination on the validity of disputed claims, in the absence of good cause to do so, and where the dissemination of the document will not aid in discovery?

Brief for Appellants, at 4.

Instantly, the trial court ordered that confidentiality be lifted as to the 18-Page Report, and UPMC appealed the order in an attempt to maintain the document's confidentiality. Before we address the merits of UPMC's claim,

however, we must determine whether this appeal is properly before us since the order appealed from is an interlocutory order.[2]

Ordinarily,

> [a]n appeal may be taken only from a final order unless otherwise permitted by statute or rule. A final order is ordinarily one which ends the litigation or disposes of the entire case; however, "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court." Pa.R.A.P. 313(a). A collateral order is defined under Pa.R.A.P. 313(b) as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

**Ben v. Schwartz**, 729 A.2d 547, 550 (Pa. 1999). For the collateral order doctrine to apply, each of the three factors must be satisfied. **Crum v. Bridgestone/Firestone N. Am. Tire, LLC**, 907 A.2d 578, 583 (Pa. Super. 2006).

We first consider whether the order satisfies the separability prong of the doctrine. Our Supreme Court has stated that an order is separable from the main cause of action where it is "entirely distinct from the underlying issue in the case" and "can be resolved without an analysis of the merits of the underlying dispute." **K.C. v. L.A.**, 128 A.3d 774, 778 (Pa. 2015) (citation omitted). Here, the parties dispute whether the 18-Page Report

_____

[2] PCS has filed a Motion to Quash Appeal for Lack of Collateral Order Jurisdiction, and UPMC has filed a response asserting that the order in question is a collateral order pursuant to the requirements of Pa.R.A.P. 313.

should be confidential in part because the parties dispute whether the document tends to prove or disprove whether certain communications made by UPMC are false. **See** Response in Opposition to [PCS'] Renewed Motion to Lift Confidentiality Order. PCS asserts that the allegedly false statements in these communications interfered with its business relationships, which is one of the main causes of action in this matter. **See** Third Amended Complaint at ¶¶ 105-09; 183-203. Accordingly, the order in question invites analysis of the merits of the underlying dispute, and we do not consider the order appealed from to be separable from the main cause of action. **K.C.**, **supra**.

Additionally, we note that UPMC cannot satisfy the second prong of the collateral order doctrine. Considerations relevant to whether the right is too important to be denied review include whether it implicates rights rooted in public policy or has an impact on individuals other than those involved in the particular litigation. **Ben**, **supra** at 552. In this vein, appeals from discovery orders to disclose potentially privileged information often satisfy this element. **See, e.g.**, **Dodson v. Deleo**, 872 A.2d 1237 (Pa. Super. 2005). Here, however, the 18-Page Report has already been disclosed in discovery, and UPMC has provided no legal support in its response to the motion to quash for its contention that confidentiality must be maintained, merely labeling it a "confidential internal document." Response in Opposition to [PCS'] Motion to Quash, at 15.

Moreover, we note that the 18-Page Report was offered and accepted into evidence at a public hearing in April 2015; following that hearing, as permitted by the court, the document was disseminated to several governmental agencies.[3] **See** Order, 4/29/15. As we noted in **Dodson**, "once disclosed, the confidentiality of potentially privileged information is irreparably lost." **Dodson**, **supra** at 1240. Because the confidentiality of the 18-Page Report has already been compromised, the order appealed from does not involve a right too important to be denied review. **Ben**, **supra**.

For the foregoing reasons, the order appealed from does not satisfy the collateral order doctrine as set forth in Rule 313(b), and we are without jurisdiction to consider the appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2017

---

[3] The agencies include the City of Pittsburgh, the County of Allegheny, the Port Authority of Allegheny County, and the Pennsylvania Turnpike Commission.